## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAREFUL SHOPPER, LLC | CASE NO:  1:18-cv-03019 (RJD)(RML) |
| Plaintiff, | |
| | |
| v. | **AMENDED COMPLAINT** |
| | |
| TP-LINK USA CORPORATION | **DEMAND FOR JURY TRIAL** |
| Defendant, | |
| and | |
| TP-LINK NORTH AMERICA INC<br>145 S STATE COLLEGE BLVD STE 400<br>BREA. CA 92821-5833 | |
| New Party Defendant | |

Plaintiff alleges on knowledge as to himself, but otherwise on information and belief, as follows:

### INTRODUCTION

1.      Plaintiff is a third-party seller on Amazon, which means that Plaintiff is a downstream purchaser that often lists and sells goods bearing the trademarks and other intellectual properties of manufacturers and other holders of intellectual property rights.  Such sales are absolutely lawful under the "First

Sale" and "Fair Use" doctrines . . . and expressly permitted by Amazon, so long as the goods sold and delivered are authentic and the intellectual properties are not misused.[1]

2.  Plaintiff Careful Shopper LLC ("CSC"), located in Brooklyn, New York, brings this suit following its commercial and financial ruination resulting from Defendants' tortious interference with Plaintiff's existing and prospective business relationship with Amazon Services LLC and, through Amazon, the world of ecommerce reachable through amazon.com.

3.  Defendant TP-Link USA Corporation ("TPU") and/or TP-Link North America, Inc. ("TPN") published written complaints to Amazon, libelous per se, charging Plaintiff with three (3) instances of infringing TPC's intellectual property by *listing* (not *selling*) counterfeit goods for sale on amazon.com ("IP Complaints").   Said IP Complaints directly caused Plaintiff's permanent expulsion as a seller on the Amazon website.

4.  Over a three-year period CSC built an Amazon platform presence from zero to approximately $1.5 million in annual sales, with supplier relationships and other goodwill that cannot be replicated.   Now . . . there is only ruin.

5.  Defendant operates as a subsidiary of TP-LINK Technologies Co., Ltd. ("TPC"), a Chinese parent company.  The parent TP-Link has lately been the world's number one provider of Wi-Fi products, shipping over 80 million products around the globe during 2017.

---

[1] See "We Do Not Enforce" at https://www.amazon.com/gp/help/reports/infringement

6.      TPU, a subsidiary of TPC, was founded in 2008 and is based in Orange

County, California.  It manufactures and supplies networking products for

home and small business, known as SOHO and SMB.  Examples are switches,

routers, and components for wireless systems.

7.      TPU's products are available at substantially all major electronics retailers,

online and in-store, in New York, including amazon.com, jet.com, Best Buy,

COSTCO, Home Depot, Office Depot, Sam's Club, Sears, Staples, Target,

and Walmart.[2]

8.      TPN is a subsidiary of TPU or otherwise affiliated with TPU, and was

registered as a California corporation on or about March 7, 2017.

9.      TPN functions as an alter ego of TPU and its business offices are located at

TPU's principal address in Brea, CA, while it handles TPU/TPN's

warehousing a few miles away in Fontana, CA.

10.     TP-Link's Linkedin page lists at least two (2) dual positions, believed to be

specifically at issue here, held under simultaneous employment by TPU and

TPN:

- Director of E-commerce at TP-Link North America, Inc.
  Greater Los Angeles Area
  Current: Senior Channel Strategy Manager,B2B at **TP-Link USA** Corporation[3]
- ChannelStrategy Manager, Ecom at TP-Link USA Corporation
  Hangzhou, Zhejiang, China
  Current: Channel Strategy Manager, Ecom at **TP-Link** North America, Inc.[4]

---

[2] https://www.tp-link.com/us/where-to-buy
[3] https://www.linkedin.com/company/tp-link/ at See all 78 employees on LinkedIn,
Screen 1 (last visited on June 3, 2018)
[4] *Id.*  at Screen 8.

11. One Tom Lei (Screen name "amazon91773"), believed to be an employee of both TPN and TPU, operates out of TPN's warehouse facility in Fontana, CA, attempting through various means, some illegal, to kill off Amazon-related TPU competitors (that are not so-called Authorized Resellers).

12. Mr. Lei purchased in his own name (using TPU funding or reimbursement) TPU products from CSC on approximately 20 occasions, without disclosure of TP-Link involvement, between March and December 2017. Exhibit 1 hereto. He received them at TPU/TPN's Fontana CA warehouse, examined the products, and returned a number of them. All were authentic and no claim of counterfeiting was made. Instead, Mr. Lei or those acting in concert with him, libeled CSC in March 2018 for *listing* counterfeit products while never claiming that CSC *sold* a counterfeit TPU product.

13. Mr. Lei has also utilized other subterfuges to harm honest resellers of TPU products vis-à-vis Amazon, including (i) buying, opening and returning multiple products to FBA, thereby artificially skyrocketing target competitors' return rate and assuring Amazon's prompt delisting and gating (precluding competition) of the victim-competitor's TPU products, and (ii) reporting falsely to Amazon, purportedly as a random consumer, that TPU/TPN had advised (upon routine inquiry to TPU for warranty registration purposes or the like) that the competitors' products were on a TPU/TPN list of stolen serial numbers. Subsequent investigation has confirmed that TPU had no such list of stolen items by serial number. Mr. Lei's conduct, or that of those

4

complicit, induced Amazon to delist and ban honest resellers from competing in the sale of TPU products.

14.   TPC, TPU and TPN purport to be separate corporate entities, insulated from and unrelated to the acts of each other.  In fact and law, however, the three entities are in substance a single, consolidated entity.  TPU and TPN are but mere departments of TPC, for the following reasons amongst many others:

   a.   TPU was established as a TPC beachhead in the US market in the midst of one of the most severe economic downturns in generations;

   b.   Notwithstanding economic conditions TPU was able to spend lavishly for a start up operation, incorporate TPC's experienced employees, experiment at will and otherwise benefit directly, i.e. not at arms length, from TPC's wealth;

   c.   TPU was able to take many risks in marketing, branding, public relations and sales personnel only due to the largesse of funding from TPC;

   d.   Dependence on TPC's wealth never changed for TPU and it has been and is substantially dependent upon TPC's wealth to date;

   e.   TPC owns all the intellectual property associated with the "TP-Link" brand;

   f.   Despite its use of TPC's intellectual property and critical dependence on TPC funding, TPU's former CEO has sworn before a District Court that "TP-Link USA has no contractual relationship with TP-LINK China that governs their business relationship."  Exhibit 2 hereto;

   g.   Beyond funding and intellectual property, TPC controlled the affairs of TPU, both on the policy and day to day levels, far more than warranted by the legitimate interests of a parent corporation;

   h.   TPU is largely invisible to the public, as "TP-Link" is the brand name and TPC runs and controls TPU's online presence by, *inter alia,* promulgating the Terms of Use without mention of TPU;

   i.   Many or most key employees of TPU/TPN received their training from TPC.

5

j.   Key employees float between the parent and subsidiary with regularity, maintaining policies set solely by TPC.

k.   Employees of TPC regularly instruct TPU employees in the discharge of their day to day job responsibilities;

l.   Employees of TPC are invested with authority to evaluate TPU employee performance and execute final decisions as to employee retention, promotion, and discharge;

m.   A consent entry among and between TPC, TPU, and the Federal Communications Commission was executed by a single TPU executive, one Lewis WU who, in the summer of 2016, warranted his authority to bind all TP-link entities foreign and domestic.  Since TPU claims to have no contractual relationship with TPC, Mr. Wu was acting as an authorized TPC officer in executing the FCC consent entry.

n.   Mr. Wu was interviewed for a widely-published article in which he is described as one who "oversees the company functions in the United States" and. yet, the article states that TPU's "head office" is in China,[5] i.e. TPC;

o.   Although Mr. Wu executed the FCC consent entry as EVP of TPU as of August 2016,[6] TP-Link's Linkedin page states that Mr. Wu was TPN's EVP from 2015-2018;[7]

p.   TP-Link's principal internet domains were registered with governmental authorities by TPC;

q.   TPC has and exercises overwhelming authority of TPU/TPN's investment decisions, financing decisions, pricing and product strategies, and commission payout;

r.   General counsel to TPU/TPN, Ginny Tong, is held out in TPC's Terms of Use as counsel to TPU, and held out as a TPU employee as well in her registration with the California State Bar.  Simultaneously, however, she is held out on her Linkedin page as (i) counsel to TPN, and (ii) endorsed for her writing skill "by two endorsers who were

---

[5] http://www.goldenbridgeawards.com/people/Lewis-Wu.html; see also
http://www.networkproductsguide.com/people/Lewis-Wu.html
[6] https://apps.fcc.gov/edocs_public/attachmatch/DA-16-850A1.docx
[7] https://www.linkedin.com/in/lewis-wu-920577a8/

Ginny's colleagues at TP-Link USA Corp."

s. Nine (9) employees identified on TP-Link's Linkedin page are simultaneously employed by both TPU and TPN, two (2) TPC employees are simultaneously employed at TPU or TPN, and another two (2) employees are employed simultaneously at a non-descript "TP-Link" and TPN.[8]

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the citizenship of the parties is diverse and the amount in controversy is in excess of $75,000, exclusive of costs and interest.

16. The alleged acts of tortious interference and other conduct directed at CSC effected an "injury that would be felt by [the plaintiff] in the State in which []he lives and works, *Calder v. Jones*, 465 U.S. 783, 790, 104 S. Ct. 1482, 1487 (1984), and TPU/TPN's "allegedly tortious actions were expressly aimed at" New York. *Lopez v. Shopify, Inc.,* 2017 U.S. Dist. LEXIS 77708, at *23 (SDNY 2017)

17. Personal jurisdiction by this Court over TPU and TPN are also proper pursuant to CPLR § 302(a)(3)(i) because TPU and TPN:

   A. committed tortious causing injury outside of New York that targeted and harmed Plaintiff in New York;

   B. TPU/TPN regularly does or solicits business, or engages in other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in New York, namely, its SOHO and SMB networking products; or

---

[8] https://www.linkedin.com/search/results/people/?facetCurrentCompany=%5B%2294070 53%22%5D

C. TPU/TPN expected or should reasonably have expected the acts complained of herein to have consequences in New York and derives substantial revenue from interstate or international commerce.

18.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims asserted herein occurred in the Eastern District of New York, namely, Plaintiff's listing of products on, receipt of notices, and permanent expulsion from amazon.com.

## FACTS

19.    TPU sells its goods on amazon.com, either in its own right or as a First-Party Seller with goods "sold and fulfilled" by Amazon.

20.    Plaintiff is a third-party seller on Amazon, which means that Plaintiff is a downstream purchaser that often lists and sells goods bearing the trademarks and other intellectual properties of manufacturers and other holders of intellectual property rights.  Such sales are absolutely lawful under the First Sale" and "Fair Use" doctrines and expressly permitted by Amazon, so long as the goods sold and delivered are authentic and the intellectual properties are not misused.[9]

21.    Plaintiff and Amazon are parties to Amazon's Business Solutions Agreement, binding both parties to the terms thereof and policies adopted thereunder.  See https://sellercentral.amazon.com/gp/help/external/1791?ref=efph_1791_cont_521&language=en_US

---

[9] See "We Do Not Enforce" at https://www.amazon.com/gp/help/reports/infringement

22. During early 2017-early 2018 Plaintiff acquired a handful of TP-Link products.

23. Plaintiff sourced each and every TPU product thus acquired from Amazon directly, Fry's Electronics, Inc., or B&H Photo Video, all of which are Authorized Resellers of TPU products. Plaintiff never sourced a TPU product except as stated in this paragraph.

24. Fry's, B&H Photo Video and Amazon, as Authorized Resellers of TPU's products, received their inventory of TPU products directly from TPU/TPN or its authorized agent. See n. 2, *supra.* The products thus acquired by Authorized Resellers and resold to CSC were authentic.

25. Plaintiff listed various TPU products for sale on amazon.com in early 2017-early 2018.

26. All subject TPU products listed for sale were at all relevant times physically held in Amazon's warehouse under its Fulfilled by Amazon ("FBA") program, whereunder Amazon handles storage, delivery, customer complaints and other logistics. They could have been checked for authenticity at any time.

27. On or about March 31, 2018 TPU/TPN reported to Amazon that Plaintiff had *listed* two (2) counterfeit TPU Products (Exhibit 3 hereto):

> From: "seller-evaluation@amazon.com" <seller-evaluation@amazon.com>
> Date: March 31, 2018 at 5:11:31 PM EDT
> To: "astarke613@gmail.com" <astarke613@gmail.com>
> Subject: Warning: Notice of Intellectual Property Rights Infringement
> Reply-To: "seller-evaluation+C3RJUR3HFTXUDM-

TSXRDOTBRJO2S@amazon.com" <sellerevaluation+
C3RJUR3HFTXUDM-TSXRDOTBRJO2S@amazon.com>

Hello,

We are contacting you because we received a report from a rights owner
that you are listing counterfeit items. Examples of these items are listed
below:

ASIN: B00PDLRHFW, TP-Link Archer AC1900 Smart WiFi Router -
Dual-Band Gigabit (C9)
ASIN: B0168G0KZY, TP-Link Archer AC1200 Reliable Dual-band WiFi
Router (C50)

We may let you list this content again if we receive a retraction from the
rights owner. Their contact information can be found
below.

TP-Link, Compliance
compliance-usa@tp-link.com

If the rights owner agrees to retract their complaint, they must send the
retraction to us at notice-dispute@amazon.com.

If you believe that the reported content does not infringe the rights
owner's intellectual property rights, you may email notice-dispute@
amazon.com with supporting information.

We consider allegations of intellectual property infringement a serious
matter and your account is under review. If we receive more
complaints about your listings, we may not allow you to sell on
Amazon.com.

To learn more about this policy, search for "Intellectual Property
Violations" in Seller Central Help.
Complaint ID: 1574766671,1574766551

28.    Amazon has formal, mandatory procedures precedent to delisting a seller

based upon authenticity complaints from an alleged owner of intellectual

property.  The procedure and required attestations are published at

https://www.amazon.com/gp/help/reports/infringement (Exhibit 4 hereto).

TPU/TPN executed the foregoing procedure with falsity and malice.[10]

29.     TPU/TPN had ample opportunity and did in fact, albeit surreptitiously, test purchase many of CSC's TP-Link offerings to determine authenticity. Exhibit 1 hereto.  All were authentic and TPU has never stated to the contrary. It chose to allege Plaintiff's "counterfeiting operation" with no factual basis whatever and in the face of all contra-indications.  Such actions were malicious.

30.     If TPU/TPN/TPC genuinely thought CSC's listings were of counterfeit merchandise, it also had a remedy to send Plaintiff a takedown notice under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §512.  Failure to use this remedy instead of reporting directly to Amazon bespeaks a specific intent to harm Plaintiff.

31.     On April 3, 2018 Plaintiff emailed TPU/TPN at the Amazon-designated address, presenting documentary proof of authenticity and demanding that TPU/TPN retract its erroneous complaint to Amazon (Exhibit 5 hereto):

> From: "A. Starke" <astarke613@gmail.com>
> Subject: DEMAND FOR RETRACTION OF RIGHTS COMPLAINTS

---

[10] On information and belief, TPU/TPN attested to the following per the form:

**Statements**

"I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

"I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

AND COMMITMENT TO CEASE SALES OF TP-LINK RESTRICTED
PRODUCTS
Date: April 3, 2018 at 3=07=04 PM EDT
To: compliance-usa@tp-link.com

To whom it may concern:

I received the following email from Amazon:

[material omitted to streamline complaint.  Full document is Exhibit 5]

I am requesting THAT YOUR COMPANY RETRACT this complaint BY
SENDING THE RETRACTIONS TO
NOTICEDISPUTE@AMAZON.COM. These items were purchased in
very small quantity from an authorized re-seller, specifically from
amazon.com and Amazon ITSELF WAS the seller. UNLESS YOU IN
GOOD FAITH DOUBT THE GENUINENESS OF OUR ATTACHED
DOCUMENTATION, I AM SURE YOU WILL UNDERSTAND THAT
YOUR RIGHTS COMPLAINT ASSERTED UNTRUE CLAIMS
AGAINST CAREFULSHOPPER. We have no intention and never did
intend to sell your product in any sort of large quantity or do anything
disruptive to the sale and retail fulfillment of your products. We only
intended to purchase a small handful of authentic items and sell them
quickly at their suggested retail prices. We had no awareness that this
CONFLICTED with any of your company's policies and *we were not
forewarned by your company in the way that most companies forewarn
those whom they do not want selling their products.* I politely request that
you please, as soon as possible, remove this rights complaint against my
company, Carefulshopper, by contacting Amazon at the email address
notice-dispute@amazon.com. We know well that your products are the
best in your industry and we ourselves make use of your products. Going
forward we would like to know how we can become an authorized re-
seller of your products. If for any reason we cannot, we are prepared to
stop further selling ANY of the said products and others of which you
deem that we are ineligible to sell. I can be reached by phone on my cell
phone at 216-905-2153 for further correspondence or via email.

Thank you for your understanding in this matter.

Sincerely,

Adam Starke
Owner Careful Shopper LLC

TP-Link Archer
AC1200.pdf

TP-Link Archer
AC1900.pdf

TPU/TPN did not acknowledge or respond to CSC, nor did it retract its complaint, and has not done so to this day.

32.    Prior to April 9, 2018 TPU/TPN again reported to Amazon, falsely, that Plaintiff was again listing counterfeit TPU Products, citing a third product. Discovery will determine the exact date of TPU/TPN's second false report of alleged counterfeiting.  On information and belief TPU/TPN made this second report with (i) knowledge of Amazon policies providing for suspension upon multiple IP Complaints, and (ii) with specific intent to cause, or reckless disregard in causing, Plaintiff's expulsion from Amazon.com (Exhibit 6 hereto):

> From: "seller-evaluation@amazon.com" <seller-evaluation@amazon.com>
> Date: April 9, 2018 at 7:37:20 AM EDT
> To: "astarke613@gmail.com" <astarke613@gmail.com>
> Subject: Warning: Notice of Intellectual Property Rights Infringement
> Reply-To: "seller-evaluation+C3RJUR3HFTXUDM-T240AR46CIEJ1A@amazon.com" <seller-evaluation+C3RJUR3HFTXUDMT240AR46CIEJ1A@amazon.com>
>
> Hello,
>
> We are contacting you because we received a report from a rights owner that you are listing counterfeit items. Examples of these items are listed below:
>
> ASIN: B010S6SG3S, TP-Link AC1750 WiFi Range Extender with High Speed Mode and Intelligent Signal Indicator (RE450)
>
> We may let you list this content again if we receive a retraction from the

rights owner. Their contact information can be found below.

TP-Link, Compliance
compliance-usa@tp-link.com

If the rights owner agrees to retract their complaint, they must send the retraction to us at notice-dispute@amazon.com.

If you believe that the reported content does not infringe the rights owner's intellectual property rights, you may email noticedispute@ amazon.com with supporting information.

We consider allegations of intellectual property infringement a serious matter and your account is under review. If we receive more complaints about your listings, we may not allow you to sell on Amazon.com.

To learn more about this policy, search for "Intellectual Property Violations" in Seller Central Help.
Complaint ID: 1594857291

33.     Plaintiff made repeated attempts to convince Amazon of its innocence of the

alleged wrongdoing, without success. On April 23, 2018 Plaintiff provided

proof (see Amazon's Final Details for Order #111-6388017-8133815,

attached as Exhibit 7) to Amazon that it had purchased the accused items from

an authorized source:

From: Adam Starke
Sent: Monday, April 23, 2018 5:44:06 PM
To: noAce-dispute@amazon.com
Subject: ASIN B0168G0KZY, B00PDLRHFW, B010S6SG3S

Regarding asins: B0168G0KZY, B00PDLRHFW, B010S6SG3S

TP Link has made a claim against our goods which we sold that they were inauthentic. This claim is FALSE. All these items were purchased from amazon.com and amazon was the seller on record. We no longer intend to sell these items as we see clearly it is against the manufacturers wishes. However, regarding their claim that our items were inauthentic this is FALSE and we regard this claim as a defamation against us liable to proceedings in a court of law. Please remove the inauthentic complaints against us.

34.     On April 27, 2018, having recalled the accused items and having them in its

possession, and in response to a request from Amazon Seller-Support,

Plaintiff further supported the authenticity of the accused items by providing

pictures of the items' identifying information, e.g. Model and Serial Nos:

(Exhibit 8 hereto):

> **From:** Adam Starke <adam@carefulshopper.com>
> **Date:** April 27, 2018 at 11:11:40 AM EDT
> **To:** "notice-dispute@amazon.com" <notice-dispute@amazon.com>,
> "seller-performance@amazon.com" <seller-performance@amazon.com>
> **Subject: ASIN B0168G0KZY, B00PDLRHFW, B010S6SG3S**
>
> Regarding asins: B0168G0KZY, B00PDLRHFW, B010S6SG3S
>
> TP Link has made a claim against our goods which we sold that they were
> inauthentic/fake goods. This claim is FALSE. All these items were
> purchased from amazon.com and amazon was the seller on record. We no
> longer intend to sell these items as we see clearly it is against the
> manufacturers wishes. However, regarding their claim that our items were
> inauthentic this is FALSE and we regard this claim as a defamation
> against us liable to proceedings in a court of law. Please remove the
> inauthentic complaints against us.

35.     On April 28, 2018 Amazon emailed Plaintiff, acknowledging the controversy

over TPU/TPN products, the following status report on Plaintiff's appeal

(Exhibit 9 hereto):

> From: Amazon <notice-dispute@amazon.com>
> Date: April 28, 2018 at 1:16:59 AM EDT
> To: "astarke613@gmail.com" <astarke613@gmail.com>
> Subject: Notice: Policy Warning
> Reply-To: Amazon notice-dispute@amazon.com
>
> Hello,
>
> We are still reviewing your account. We will send you an email when we

finish the review.
ASIN(s): B00PDLRHFW, B0168G0KZY
Complaint ID: 5022245921

Sincerely,

Seller Performance Team

36.   Three days later Amazon finally adjudicated Plaintiff's appeal and, true to its

word ("If we receive more complaints about your listings, we may not allow

you to sell on Amazon.com."), permanently expelled Plaintiff from

amazon.com on May 1, 2018 (Exhibit 10 hereto):

> From: Amazon <seller-performance@amazon.com>
> Date: May 1, 2018 at 5:56:16 AM EDT
> To: "adam@carefulshopper.com" <adam@carefulshopper.com>
> Subject: Your Amazon.com selling privileges have been removed
> Reply-To: Amazon <seller-performance@amazon.com>
> Hello,
>
> We reviewed your account and the information you provided, and we have
> decided that you may not sell on Amazon.com.
>
> Please ship any open orders. If you have funds in your account, they will
> be available after any amounts paid for A-to-z claims or chargebacks on
> your orders have been deducted. You can see your balance and settlement
> information in the Payments section of Seller Central.
>
> If you have questions about those, please write to payments-
> funds@amazon.
>
> Sincerely,
> Seller Performance Team

37.   Plaintiff exhausted all possible administrative options at Amazon, including

appellate procedures and a certified letter to Amazon's General Counsel . . . to

no avail.  Neither Amazon nor TPU/TPN disputed that the three ASINS cited

as counterfeit were, in fact, purchased from an authorized reseller.  Plaintiff

was permanently expelled nonetheless.

38.     By reason of the expulsion Plaintiff was unable to sell its aging inventory,
        access his funds in Amazon's hands, or pay his loan owing to Amazon Capital
        Support.  Plaintiff suffered a Notice of Default on said loan, accrual of
        interest, imposition of countless fees and other burdens incidental to the
        purported breach of Amazon's Business Solutions Agreement and program
        policy.

39.     There exists no alternate, comparable platform (to Amazon) whereby a third-
        party seller can earn a living, as approximately one-half of all online retail
        sales are made on amazon.com, and the other half of online retail sales are
        diffused amongst millions of websites.

40.     The above cascade of adversities drove Plaintiff to insolvency, destroying a
        business producing profit of approximately $200,000 per annum.
        Accordingly, Plaintiff has been damaged, as a direct result of TPU/TPN's
        false notices to Amazon, in the approximate amount of $1,500,000 to
        $2,000,000.

41.     TPU/TPN's actions and inactions, moreover, were willful, wanton, actually
        malicious and outrageous, so as to justify the imposition of punitive damages
        in an amount not less than $4,000,000, together with attorney fees to be
        determined by the Court.


                    **FALSE INFRINGEMENT CLAIMS AT AMAZON**


42.     In an April 2018 article by Chris McCabe, the renowned expert in Amazon
        Seller Performance issues, Mr. McCabe summarizes "[h]ow unethical sellers

                                        17

abuse the system with bogus IP, trademark, copyright and patent reports:"[11]

> In order to meet a minimum liability standard, Amazon will act upon properly submitted and completed notice claims of infringement. They will notify specified marketplace sellers which party reported them, on what listing, and how to reach that would-be rights owner via email. The rest though, is up to you. And, unless you (and possibly your legal team) can prove that the Notice claim is false, Amazon considers it valid and actionable. **Unfortunately, word is out among potential Notice claim abusers that anyone can submit a form.** Amazon are not worried about additional vetting or verification processes. Investigators merely check the form for completed content in all the right spaces, kill the listings and send off the notifications. They don't independently verify that any of the information is actually correct, or valid. The rights owner makes a legally-binding declaration in the form, and signs it. What if you can't locate a party who submits a false form against you? It's up to you to chase them down and then show Amazon teams that the infringement allegations are false. There is no guarantee that you'll be successful though, as results vary.

43.     TPU/TPN was an unethical seller in the instant case when it falsely executed IP Complaints against Plaintiff and, even if it issued the first complaint (3/31/18) as an honest mistake (it did not), it received absolute proof of its error on April 3, 2018 . . .  but did not retract its evil report; in fact, it issued another damning report and thereby sealed Plaintiff's doom.

44.     TPU/TPN acted maliciously and intentionally in reporting to Amazon that Plaintiff was listing counterfeit TPU/TPN products and, if fact, TPU/TPN's second report to Amazon was made when TPU/TPN indisputably knew its report was false because Plaintiff had submitted proof beyond any doubt that Plaintiff's TPU products were authentic.

---

[11] Chris McCabe is a former Investigation Specialist for Amazon's Seller Performance team.  His article is "False Infringement Claims are Rife on Amazon," at https://www.webretailer.com/lean-commerce/false-infringement-claims-amazon/

## CLAIM I: INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONSHIPS

45. Plaintiff incorporates the allegations above as though the same were re-written at length.

46. In order to state a claim for tortious interference with prospective economic advantage, plaintiff must plead facts sufficient to demonstrate that she had "(1)...business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) defendant's acts injured the relationship." *Catskill Development L.L.C. v Park Place Entertainment Corp.,* 547 F.3d 115, 132 (2d Cir. 2008); See also *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 114 (2d Cir. 2010).

47. As of March 31, 2018 Plaintiff was a third-party seller on Amazon and thriving.

48. TPU/TPN's accusations of counterfeiting, made directly to Amazon, were for the improper purpose of suppressing competition; and those actions interfered with Plaintiff's business relationship with Amazon and proximately caused Plaintiff's expulsion. Discovery is necessary to identify other improper purposes, if any, for the challenged conduct.

49. TPU/TPN's accusations were false and TPU/TPN knew they were false at relevant times. TPU/TPN's statements were made maliciously and with ill will, as business entities do not lie about competitors absent a strong measure of ill will.

50.     Amazon stated that it took TPU/TPN's accusations very seriously, threatened to terminate Plaintiff for repeated IP Complaints and, in fact, expelled Plaintiff as an Amazon third-party seller after receiving repeated IP Complaints.

51.     Amazon stated that it would act favorably if TPU/TPN would retract its accusations; but, despite being shown indisputable proof of Plaintiff's innocence of the counterfeiting charges, TPU/TPN refused to retract the IP Complaints.

52.     TPU/TPN's acts destroyed Plaintiff's relationship with Amazon, thereby causing the destruction of Plaintiff's business.

### CLAIM II: LIBEL PER SE

53.     Plaintiff incorporates the allegations above as though the same were re-written at length.

54.     The elements of a cause of action for slander under New York law are (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) "of and concerning" the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege."  Under New York defamation law, the Courts have distinguished "a limited category of statements" that are considered "libelous *per se* which do not require pleading and proof of special damages." *Davis v. Ross*, 754 F.2d 80, 82 (2d Cir. 1985).

55.     TPU/TPN's scheming accusations against Plaintiff charged Plaintiff with a serious crime or crimes, to wit: counterfeiting, a form of fraud, undertaken by

means of interstate wire services, itself a Federal felony.  18 U.S.C. §1343.

56.    TPU/TPN's accusations against Plaintiff to Amazon directly injured Plaintiff

in its business and trade because, as TPU/TPN knew, Amazon will not tolerate

repeated counterfeiters as Amazon sellers.

*57.*    TPU/TPN's accusations against Plaintiff caused Plaintiff reputational injury,

e.g. absence of website offerings, reportable history to prospective employers

and investors, and too many ramifications to detail.

58.    TPU/TPN's accusations against Plaintiff constitute libel *per se.*

59.    Although injury may be presumed due to libel *per se,* Plaintiff suffered above

and beyond presumed damages, e.g. loss of enterprise value and income.  In

particular, Careful Shopper, lost good will specific to the Careful Shopper-

Amazon relationship that cannot be recovered including, *inter alia,* Plaintiff's

right to sell a broad range of products on amazon.com, much of which

entitlement was grandfathered.[12]

WHEREFORE, Plaintiff prays for relief as follows:

A.    Compensatory damages of at least $2,000,000;

B.    Punitive damages of not less than $4,000,000;

C.    Attorney fees and costs; and

D.    Such other and further relief as the Court may order.

---

[12] As an established third-party seller, Plaintiff was entitled to sell many products that a new seller would be precluded from selling based upon Amazon's "gating" and other restrictions.

## JURY DEMAND

Plaintiff demands a trial by jury as to all triable issues.

/s/Mark Schlachet_____
Mark Schlachet
Law Offices of Mark Schlachet
3515 Severn Road
Cleveland, Ohio 44118
Telephone: (216) 225-7559
Facsimile: (216) 932-5390
Email:
markschlachet@me.com

***Attorney for Plaintiff***