1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3    ------------------------------------X
                                        :
4    CAREFUL SHOPPER, LLC,              :
                                        :  18-CV-03019 (RJD)
5                    Plaintiff,         :
                                        :
6               v.                      :
                                        :  225 Cadman Plaza East
7    TP-LINK USA CORPORATION,           :  Brooklyn, New York
                                        :
8                    Defendant.         :  November 30, 2018
     ------------------------------------X
9

10        TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
                BEFORE THE HONORABLE ROBERT M. LEVY
11                UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13   For the Plaintiff:        MARK SCHLACHET, ESQ.
                               Law Offices of Mark Schlachet
14                             3515 Severn Road
                               Cleveland, Ohio 44118
15
                               JACOB SCHINDELHEIM, ESQ.
16                             Koss & Schoufeld LLP
                               500 Fifth Avenue, Suite 3130
17                             New York, New York 10110

18   For the Defendant:        HEATHER AUYANG, ESQ.
                               JOEDAT H. TUFFAHA, ESQ.
19                             LTL Attorneys LLP
                               300 S. Grand Avenue, Suite 1400
20                             Los Angeles, California 90071

21

22   Court Transcriber:        MARY GRECO
                               TypeWrite Word Processing Service
23                             211 N. Milton Road
                               Saratoga Springs, New York 12866
24

25

     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service

2

1   (Proceedings began at 2:06 p.m.)

2         THE COURT:  This is docket number 18-CV-3019,

3   Careful Shopper v. TP-Link.  Will counsel please state their

4   appearances for the record?

5         MR. SCHLACHET:  Mark Schlachet for the plaintiff,

6   Careful Shopper.  And Jake Schindelheim is also on with us but

7   he has his phone muted so as to avoid background noise.

8         MR. SCHINDELHEIM:  I'm here but I'm going to mute it

9   so you don't have this.

10        THE COURT:  Okay.

11        MR. SCHINDELHEIM:  Thank you.

12        THE COURT:  Thanks.

13        MS. AUYANG:  This is Heather Auyang for defendant

14  TP-Link.

15        MR. TUFFAHA:  Good afternoon, Your Honor.  This is

16  Joe Tuffaha on behalf of TP-Link.

17        THE COURT:  I'm sorry, can I get your last name?

18        MR. TUFFAHA:  Your Honor, it's Tuffaha, T-U-F-F-A-H-

19  A.

20        THE COURT:  Thank you.  Okay.  So the plaintiff is

21  moving to compel.  I'd like to hear plaintiff's theory of

22  jurisdiction.  That would be helpful just to start off with

23  and then we'll get into the discovery.

24        MR. SCHLACHET:  Your Honor, our theory of

25  jurisdiction is under CPLR Section 302(a)(1) where we both

3

1   should be -- let me back up.  We have certain facts that were

2   by happenstance pled in the complaint and those facts indicate

3   that TP-Link purchased from Careful Shopper on a number of

4   occasions, quite a few occasions, purchased its own goods

5   presumably to examine them and see if they were counterfeit or

6   authentic.  So our concept that was set out in our pre-motion

7   letter was that if TP-Link purchased goods from us and

8   examined them and knew they were authentic, then TP-Link had

9   knowledge that the statements they made to Amazon were false.

10  And I know Your Honor's probably read the papers and you know

11  what that means.

12          Now, as far as getting the articulable nexus to the

13  transaction of business, we then want to establish that TP-

14  Link sold goods into New York which were the same goods or the

15  same body of goods that we purchased in New York.  And

16  therefore, what we would have is, we would suggest that we

17  have a circle of commercial activity where TP-Link sells into

18  New York, we buy from somebody in New York, and TP-Link buys

19  from us.  And therefore, we would suggest TP-Link knew that

20  its statements were false which is one of the elements of the

21  falsity of the statements in their accounts, would be one of

22  the elements in the libelous statements and the interference

23  of contractual relations.

24          Now, in addition to that, Your Honor, our theory is

25  that TP-Link regularly conducts business in New York

4

1  sufficiently that the strictures of due process are satisfied.

2  In other words, as I cited in our letter from Justice Breyer I

3  believe, a regular flow of goods because as Your Honor I

4  believe said in <u>Perez v. Sandals Resorts International</u>, that

5  it isn't just the contacts that TP-Link had with New York but

6  it's the quality of those contacts.  And what exactly that

7  means and where the boundaries are as Your Honor stated I

8  believe in that case, New York courts have not yet drawn those

9  boundaries but they do look to the quality.  There is a

10  nuanced analysis that's required here.

11        So our theory of personal jurisdiction is that we

12  did have contacts in New York which have an articulable nexus

13  to TP-Link's offense, at least one or two of the elements of

14  the offense, and at the constitutional level we have no

15  problem because if we can establish what we believe we can

16  through discovery, TP-Link's regular flow of goods into New

17  York, then that in and of itself should be enough to get us

18  over the threshold.

19        There are other aspects but I don't want to lengthen

20  this presentation which is somewhat hypothetical by necessity

21  any more than I have to.

22        MS. AUYANG:  Your Honor, can I respond to that?

23  This is Heather Auyang.

24        THE COURT:  Yes, please.

25        MS. AUYANG:  Just to clarify the plaintiff's theory

1   the circle of commercial activity, there were never any direct

2   purchases, and the parties don't dispute this, between TP-Link

3   and Careful Shopper.  So the circle of commercial activity

4   which plaintiff is articulating is that TP-Link sold its

5   product into New York which TP-Link does not dispute.  At some

6   point Careful Shopper purchased the goods through, you know,

7   the distributor TP-Link.  Careful Shopper then placed that

8   good on Amazon.com and then TP-Link purchased the good from

9   Amazon.  So there was never a direct line, there was never a

10  direct sale between the parties and there's never been direct

11  communication between the parties.

12          TP-Link does not dispute prong one of 302(a)(1)

13  which is whether TP-Link [indiscernible] in the state.

14          THE COURT:  Right.

15          MS. AUYANG:  We represented to the Court, to Judge

16  Dearie, that TP-Link has numerous contacts in New York.  We

17  acknowledge and stipulate to this issue.  So TP-Link clearly

18  does business in New York.  So really the dispute falls on

19  whether there's a substantial nexus, articulable nexus and

20  substantial relationship between TP-Link's in state activity

21  and claims asserted in this faction.

22          The products at issue, plaintiff alleges it acquired

23  a handful of TP-Link products from early 2017 to early 2018.

24  So we're talking about a year time frame for a handful of

25  products which plaintiff is trying to show one of those

6

1 products made its way back to TP-Link through Amazon.

2          I'd just like to add that we have produced all

3 documents that relate to the plaintiff.  We've offered to, in

4 a reasonable manner, if we could help Careful Shopper support

5 their circle of commercial activity which is not articulated

6 in any case law.  And we've asked plaintiff to provide that

7 case law and they have not done so.  We've offered to -- if

8 Careful Shopper could, for example -- because we're talking

9 about a handful of products during a year time frame that

10 plaintiff is trying to show somehow made its way back to TP-

11 Link.  We've asked Careful Shopper to provide sufficient

12 identifying information about the products it believes

13 supports this commercial activity theory and that we would

14 endeavor to try to trace those products through commerce.

15 Careful Shopper has actually rejected this offer.  They

16 haven't identified one specific transaction that could support

17 the circle of commercial activity.  And they've actually said

18 that they don't have [indiscernible] numbers for the

19 [indiscernible] product they purchased.

20          So our view is that the discovery requests are more

21 akin to prong one, which TP-Link is acknowledging we do

22 business in New York.  And so it's become essentially like

23 finding a needle in a haystack.  Which specific products of

24 the handful have made its way back to TP-Link via Amazon?  So

25 I think in our view we've been cooperative.  In fact, Careful

1   Shopper in a meet and confer has said that they purchased

2   several TP-Link products from Amazon on a same day delivery

3   basis and so believe that TP-Link shipped the products to

4   Amazon in New York.  And because of same day delivery, that it

5   must be a New York distribution product.  We went back and

6   looked at our records and we said that TP-Link during that

7   relevant time frame did not ship products to Amazon in New

8   York.  And setting aside that we never did that, plaintiff

9   will have to show that one of those products actually was then

10  sold via Amazon to TP-Link.  So I think that we've made

11  efforts to support -- you know, try to help plaintiff support

12  their theory which again has never been articulated in case

13  law of the circle of commercial activity.  It's essentially

14  like looking for a needle in a haystack.  And their request of

15  all transactions [indiscernible] in New York with no time

16  limit is [indiscernible].  Thank you.

17          THE COURT:  I have a question before we get into the

18  discovery.  Am I right that there are two components then to

19  the question before Judge Dearie?  One is whether plaintiff's

20  legal theory is a valid one, and the second is whether in fact

21  there are facts to support that legal theory? Am I write in

22  hearing that from defendants?

23          MS. AUYANG:  I think that's fair, Your Honor.

24  That's a fair assessment.

25          THE COURT:  So here's just a question and I'm

8

1   throwing it out.

2          MR. SCHLACHET:  Sorry, Your Honor, I didn't

3   understand your -- are you speaking vis-à-vis the personal

4   jurisdiction issue?

5          THE COURT:  Yes.

6          MR. SCHLACHET:  Your Honor?

7          THE COURT:  Yes.

8          MR. SCHLACHET:  I think that's -- let me -- since

9   you mentioned Judge Dearie, I think it's important to

10  understand exactly how our conference with Judge Dearie

11  progressed.  If I may just take a second to give some context

12  --

13         THE COURT:  Okay.

14         MR. SCHLACHET:  -- to what Judge Dearie ordered.

15  And then I also have responses to what Ms. Auyang said that --

16         THE COURT:  Right, but I really have that question I

17  want to ask before you get to that.

18         MR. SCHLACHET:  Okay.

19         THE COURT:  I just have that question.  Is it true -

20  -

21         MR. SCHLACHET:  The way that --

22         THE COURT:  The question is is it true, as Ms.

23  Auyang is saying, that you have a disagreement, the plaintiff

24  and defendant, as to whether or not your theory of

25  jurisdiction is legally accepted?  I mean I thought I heard

9

1    from defendant's statement that they don't believe that this

2    circle of commercial activity theory has ever been adopted by

3    a court or been ruled on and that that would be something that

4    Judge Dearie would have to determine.  And the second question

5    would be if that theory is in fact legally supported, are

6    there sufficient facts to satisfy that claim?

7         MR. SCHLACHET:  Yes, Your Honor.  And I think I can

8    answer very pointedly.  The language circle of commercial

9    activity is something that I made up in order to talk about

10   the facts that we have that would seem to satisfy the

11   articulable requirement.  And those are well-established

12   terminology.  That is a well-established terminology.  We

13   simply, because when -- to answer your question, there is no

14   dispute before Judge Dearie as to whether this legal theory

15   flies.  When we responded to TP-Link's pre-motion letter, they

16   had told Judge Dearie that we were relying on a different CPLR

17   section for personal jurisdiction.  We told Judge Dearie that

18   we were relying on 302(a)(1), not only on 302(a)(3).  In the

19   course of telling Judge Dearie that, we pointed out to Judge

20   Dearie where in our complaint we cited a case called Lopez v.

21   Shopify that would have been under 302(a)(1).  And in so

22   bringing Judge Dearie's attention to Lopez v. Shopify we said

23   that that case requires an articulable nexus between the

24   transaction of business and the offense charged.  So we did

25   that in order to present a prima facie case of personal

1   jurisdiction and opened the door to discovery.  There was no

2   dispute as to whether we were talking about something other

3   than an articulable nexus.  We sought to open the doors of

4   discovery and Judge Dearie did indeed open the doors of

5   discovery.  What TP-Link is doing now is saying that the doors

6   are shut with the pre-motion letter that we wrote in order to

7   dispel the notion that we were relying on 302(a)(3) for

8   jurisdiction and citing Shopify and Lopez.  We made this

9   argument to Judge Dearie simply from the complaint where

10  there's no requirement that we plead the facts of personal

11  jurisdiction.  We made this argument in order to open the

12  discovery, open the doors of discovery.  Judge Dearie was

13  satisfied.  TP-Link seeks to shut the doors of discovery with

14  that letter.

15          THE COURT:  Okay.  So wait, just before you --

16          MS. AUYANG:  Can I save some time?

17          THE COURT:  Yes.  Hold on just one minute.  So

18  what's the minimum that you need to prove your theory?

19          MR. SCHLACHET:  On the constitutional level we need

20  to show, as Justice Breyer has said, and I have his language

21  here somewhere, a regular flow of goods.  We have to show the

22  quality of the context.  We have to show the quality of the

23  transactions in addition.  So there's a quantitative and a

24  qualitative facet to this.  The quantitative requires a flow

25  of goods, not some isolated transaction, and the qualitative

 1  requires a showing that the defendant prevailed upon New York

 2  to conduct business operations there under the laws of New

 3  York.  So on the constitutional level, it's quantitative and

 4  qualitative requirements [indiscernible].  And on the state

 5  level there's the objective analysis that is called for

 6  [indiscernible] which does reference the quality of the -- it

 7  says the exact -- I believe you [indiscernible] it in your

 8  Perez case.  It's always an objective analysis under 302(a)(1)

 9  which requires that the quality of the transactions be

10  carefully evaluated.  So we did not need to go back years, as

11  far as that's concerned.  We're willing to go back say from

12  even say the beginning of 2017.  So we're not looking for

13  years of data.  We want to know quantitatively and

14  qualitatively both for constitutional and state law purposes

15  the business that TP-Link -- now TP-Link is quite willing to

16  say we said we conduct business there, but the nature, the

17  quality of the transactions they do is not apparent to us.  We

18  don't even know who their, for sure, who their distributors

19  are and they haven't told us who their distributors are.  So

20  we need a reasonable amount of discovery.  To date, although

21  TP-Link is saying they've offered to provide all this

22  information, they've only offered to provide direct

23  information between us and TP-Link, and there are no -- there

24  is no information between us and TP-Link because we never had

25  a transaction with TP-Link.  The notion of a circle of

1  commercial activity is simply a way that I selected in my own

2  flourish to express the articulable nexus.

3             THE COURT:  Okay.  But let's --

4             MS. AUYANG:  Your Honor?

5             THE COURT:  Yes, go ahead.

6             MS. AUYANG:  Can I respond to that?

7             THE COURT:  Yes.

8             MS. AUYANG:  This is Heather Auyang.  So first of

9  all, we never shut the door on discovery.  We understand like

10 the basis of specific jurisdiction.  It's under 302(a)(1).

11 Judge Dearie ordered modest jurisdiction discovery.  This is

12 the first time that we have heard that plaintiffs are willing

13 to even limit the time frame [inaudible] 2017.

14            THE COURT:  Okay.

15            MS. AUYANG:  Again, as you know, we represented we

16 don't dispute prong one.  If there is a need for some limited

17 jurisdictional discovery on prong one which is whether TP-Link

18 does business in New York, we're willing to, for example,

19 provide the contracts with our [inaudible].  That's something

20 that should [inaudible] and we're willing to give, provide the

21 contract showing that we had distributors and identified them

22 in New York.

23            THE COURT:  Okay.  So what else?  And I just want

24 real specifics as to what you need because I actually have

25 covered some arraignments for new arrest and so we may have to

13

1    adjourn this to a little bit later in the day.  What

2    specifically does the plaintiff need in addition to the

3    contract limited to the time period, the two years or one

4    year.

5             MR. SCHLACHET:  Well, I think if we have

6    stipulations that all constitutional issues are off the table,

7    that would simplify matters somewhat.  But at the moment, we

8    have a burden to show that there is a regular flow of goods

9    into New York.  We don't have a stipulation that that issue

10   and all constitutional issues are off the table.

11            THE COURT:  Okay.  Let me get back to Ms. Auyang.

12   Ms. Auyang, what's your response?

13            MS. AUYANG:  Your Honor, in terms of wholesale

14   stipulation, we're only discussing prong one at this point

15   like keeping like disputes [indiscernible] that there is even

16   a provable circle of complexity or substantial relationship.

17   Because again, this is a defamation cause of action and these

18   communications --

19            MR. SCHLACHET:  [Inaudible] --

20            MS. AUYANG:  -- supported --

21            RECORDING:  [Inaudible] the conference.

22            MS. AUYANG:  These communications took place between

23   TP-Link, a third party called Amazia [Ph.] based in

24   California, and Amazon based in Washington.  None of the

25   communications were ever directed to New York or passed

1  through New York.  So they're fine, we agree with prong one.

2  We'll sign it stipulating in terms of confidentiality and that

3  TP-Link does business in New York.  We will not stipulate of

4  course to prong two because that would in essence speak to

5  going into personal jurisdiction.

6          THE COURT:  Okay.  So assuming we're only looking at

7  prong two, and what about the due process issues?  Are you --

8  is the battleground now just prong two of Section 302 or is

9  that it?

10         MS. AUYANG:  That's been our view, Your Honor, this

11 entire time because we have agreed, we told plaintiff that we

12 don't dispute prong one and if a stipulation is required to

13 show the Court, and as well the contracts, we're willing to do

14 that.  That's just for prong one.

15         THE COURT:  Okay.  So I think perhaps what would

16 actually be very helpful is if plaintiff could articulate

17 specifically what information plaintiff needs to litigate

18 prong two of 302.  And you know, perhaps I could give you some

19 time to do that and we can reconvene later this afternoon on

20 that specific issue.  And perhaps the two parties could meet

21 and confer just on that discovery because to the extent that

22 there's discovery that's requested on prong one, I think it's

23 unnecessary given the fact that we now have a stipulation as

24 was suggested in some of the letters.

25         MR. SCHLACHET:  And I fully agree with Your Honor.

1   We'd like that writing of course because --

2           THE COURT:  You've got it on the record.

3           MR. SCHLACHET:  -- [inaudible] were raised in the

4   pre-motion --

5           THE COURT:  It's on the record.  It's on the Court

6   record.  I mean I'm sure it can be in writing as well but

7   you've got in on the record now and I'm sure you can work out

8   a stip after that.  Yes.  So we're only looking at prong two.

9   We're not looking at the due process issues, we're not looking

10  at the flow of goods, et cetera.  We're looking at the nexus.

11  So do you want to take --

12          MR. SCHLACHET:  Very well.

13          THE COURT:  -- some time and try to figure out what

14  it is that you need and meet and confer on that, then let me

15  know.  I'll reserve some time at the end of the day if there

16  aren't too many arrests which I think I can do.

17          MR. SCHLACHET:  Could you do 4 o'clock, Your Honor?

18          THE COURT:  Yes, I'll do my best to do 4 o'clock.

19  I'll put you on for 4 o'clock and we'll see where we are.

20  Hopefully, you can meet and confer to figure this out because

21  I don't think that you have that much disagreement about the

22  discovery issues, but your disagreement is more about what

23  inferences to draw from the discovery.

24          MS. AUYANG:  I think we can, Your Honor.  I think

25  after the call we'll reconvene and we'll call you back at 4

16

1   o'clock.

2           THE COURT:  Okay.  Great.  Thank you.  Talk to you

3   soon.

4           MS. AUYANG:  Thank you very much.

5           MR. SCHLACHET:  Thank you, Your Honor.

6           MS. AUYANG:  Okay.  Bye.

7           THE COURT:  Bye.

8   (Off the record at 2:30 p.m.)

9   (Back on the record at 4:42 p.m.)

10          THE COURT:  Okay.  Thanks for your patience.  We're

11  back on the record in Careful Shopper v. TP-Link, 16-CV-3019.

12  Same counsel, same appearances?

13          MR. SCHLACHET:  Sure.  Thank you.  Mark Schlachet

14  for the plaintiff, Careful Shopper.

15          MS. AUYANG:  [Inaudible] TP-Link.  [Inaudible] on

16  the line [inaudible].

17          THE COURT:  Okay.  I'm sorry, I couldn't catch your

18  name a second ago.

19          MS. AUYANG:  Oh.  This is Heather Auyang for

20  TP-Link, defendant TP-Link on behalf of TP-Link.  There are no

21  other [inaudible] call.

22          THE COURT:  Got you.  For some reason you broke up

23  for a second.

24          MS. AUYANG:  Oh.  I apologize.

25          THE COURT:  Okay.  What's happened since we last

17

1  spoke?  Where are we?

2        MR. SCHLACHET:  Well, Your Honor, Mark Schlachet

3  here.  We did have a meet and confer and we did make I think

4  substantial progress.  We have one small issue remaining.  I

5  think we're agreed that requests for production 2, 5, and 6

6  will be responded to in a limited fashion.  I asked --

7  plaintiff asked for all documents in certain categories and

8  instead of getting all documents under RFPs 2, 5, and 6,

9  plaintiff will provide a list of model numbers and defendant,

10 if documents are available, will provide documents indicating

11 the sales of those model numbers between January 1, 2017 and

12 March 31, 2018.  I think that was our agreement.  Heather, do

13 you agree?

14       MS. AUYANG:  Yes, I agree.  I think for context, the

15 categories are sales by TP-Link, TP-Link sales manager in New

16 York; sales by TP-Link, the third party distributor in New

17 York; and sales by TP-Link to B&H Photo in New York.  So those

18 are the three categories during that time frame if such

19 documents are available.

20       THE COURT:  Okay.  And when will this production be

21 made?

22       MS. AUYANG:  We will -- I have to confer with my

23 client to -- you know, I'm not familiar with how the records

24 are kept with these particular requests.  We will endeavor to

25 produce by December 14th.

1          THE COURT:  Okay.

2          MS. AUYANG:  As long as --

3          MR. SCHLACHET:  Very good.

4          MS. AUYANG:  With the caveat that -- I guess let's

5    put it this way.  How about if once we get the list from

6    plaintiff we will endeavor to produce 14 days after we receive

7    that list.

8          THE COURT:  Okay.

9          MR. SCHLACHET:  Fine with the plaintiffs, Your

10   Honor.

11         THE COURT:  Okay.  Good.  Is there an area of

12   disagreement?

13         MR. SCHLACHET:  One issue, Your Honor, and I guess

14   as plaintiff I should go first.  In requests for production

15   number 11, we ask for TP-Link's contracts anywhere supplied

16   goods or services in New York.  Now, TP-Link is not prepared

17   at this time to provide those contracts and our reasoning for

18   wanting those contracts is that if there is a supply contract

19   in the background of a sale that links the plaintiff to TP-

20   Link, we feel that as statutory language in CPLR 302(a)(1),

21   the relationship that the acquisition of a product by

22   plaintiff, TP-Link product, has to TP-Link is more substantial

23   if the product was acquired with a supply contract between TP-

24   Link and the supplier in the background.  And substantial

25   relationship is really what prong number two is all about,

1    either an articulable nexus or a substantial relationship

2    between the contacts that the defendant has with New York and

3    the plaintiff's transaction of business out of which the

4    offense arose is the legal test that we're addressing.  And

5    plaintiff believes that isolated transaction, for example,

6    would not have the same substantiality of relationship with

7    TP-Link as would a transaction that was within the framework

8    of an ongoing supply relationship between TP-Link and the

9    seller of the product to the plaintiff.

10             THE COURT:  So, if I were to imagine what kind of

11   document you're envisioning, where -- I assume it would be a

12   contract between TP-Link and another entity.  Where in the

13   document would the information you're discussing be found?

14             MR. SCHLACHET:  Where in the document?

15             THE COURT:  In the contract.  I mean what you would

16   expect, what would you hope to find there?

17             MR. SCHLACHET:  Oh, yeah, what we would expect to

18   find is we would expect to find recitation that -- whereas

19   that the buyer wants to buy goods from TP-Link and TP-Link

20   wants to sell goods to the buyer, and therefore, the buyer

21   will buy or seller will sell.  Payment terms -- I'm not

22   interested in the payment terms obviously.  I'm interested in

23   the existence of that contract all relationship.

24             THE COURT:  Well, I think you can see what I'm

25   getting at.  I'm trying to figure out how much you can redact

1   from that contract so that if there's any privacy interests or

2   other proprietary interests that TP-Link is concerned about,

3   for example, even the name of the other party to the contract,

4   that that could be redacted and you get the information you

5   need and still have it in contract form.

6       MR. SCHLACHET:  Well, we would want to party's name,

7   the buyers' name in there because we purchased from the buyer.

8   So to show the relationship, the substantiality of the

9   relationship between the offense, between the doing of

10  business in New York and the offense that we are charging, we

11  would need to know who the buyer was, holding buyer from TP-

12  Link was.

13      THE COURT:  Okay.  So the name of the buyer is

14  important to you but the other terms other than the fact that

15  there's a buyer and seller relationship, the other terms are

16  not important to you.

17      MR. SCHLACHET:  Pretty much, pretty much.

18      THE COURT:  Okay.  Ms. Auyang, given the scope of

19  the contract might be narrowed to that extent, what's your

20  reaction?

21      MS. AUYANG:  Thank you, Your Honor.  My reaction is

22  that the actual contracts are unnecessary because TP-Link is

23  available, is already willing to produce documents of any

24  direct sale to the third-party categories for RP numbers 2, 5,

25  and 6.  And so that alone is showing a direct link from TP-

1    Link selling to, for example, B&H Photo.  There is no need for

2    the actual contract.  And [inaudible], for example,

3    [inaudible] available is that TP-Link sold this model number

4    to D&H Photo.  That is a direct connection and therefore the

5    actual contract is unnecessary redacted or not redacted.  It's

6    just not relevant really.  That's my --

7              THE COURT:  I understand your position.  So are you

8    saying that you would not -- that those documents that are

9    produced pursuant to 2, 5, and 6 are essentially the same as -

10   - are the result of a contractual relationship?  You wouldn't

11   dispute that then if the plaintiff wanted to say it was a

12   contract but didn't have the contract.  Okay.  So does the

13   plaintiff -- does that satisfy the plaintiff if there's that

14   understanding?

15             MR. SCHLACHET:  I think if we can, based on the

16   records, if we can accept any TP-Link sales into New York of

17   products have an underlying ongoing supplier relationship,

18   yes, I think if we can stipulate to that I don't need the

19   contracts [inaudible] if we stipulate to that.

20             MS. AUYANG:  I would -- can I, Your Honor?

21             THE COURT:  Yes, of course.

22             MS. AUYANG:  You know, I would say that I think that

23   the parties should see what is available, right, that TP-Link

24   can provide.  I'm not willing to stipulate that there's an

25   ongoing contractual -- this is adding too much to what's

1   happening.  That was as far as, you know, we're speaking

2   really out of context.  Again, if there's an invoice in which

3   TP-Link sold products directly to B&H Photo, we can obviously

4   stipulate that there is a direct relationship, you know, in

5   terms of the language of ongoing, continuous relationship.  I

6   mean the time frame for RP Number 2, 5, and 6 are January 1,

7   2017 to March 31, 2018.  So it's a little over a year.  So I'm

8   just cautious about what exactly, you know, Mark is asking for

9   us to stipulate to.

10          THE COURT:  I think that the addition of the word

11  ongoing is what's causing them the problem.  What does ongoing

12  add to the analysis as opposed to pursuant to a contractual

13  relationship?

14          MR. SCHLACHET:  Your Honor, I think the fact that

15  there's a sale is not as substantially related, does not make

16  the -- does not create a substantial relationship with the

17  wrongdoing that the fact that there was a sale with an ongoing

18  relationship.  I think in adjudicating under the statute, this

19  is something Your Honor certainly is, you know, in a position

20  to feel out, I think in making that adjudication is the

21  statute more likely to be satisfied with a supply relationship

22  in the background than possibly an isolated sale?

23          THE COURT:  So the language you're looking for from

24  the contract is not merely the fact that there was a contract

25  but also the scope of the relationship.  The quantity of

23

1   goods?  Is that what you're thinking of?  The period of time

2   over which they would be delivered?  Is that what you're

3   looking at?

4         MR. SCHLACHET:  Not necessarily the quantity.  Not

5   necessarily the quantity.  The quality I think.  I think this

6   is a qualitative difference.

7         MS. AUYANG:  Your Honor, I feel like this is falling

8   back into prong one.

9         THE COURT:  Yes.

10        MS. AUYANG:  That TP-Link did business.  And we're

11   really focused on a substantial relationship between merely

12   the circle of commercial activity.

13        THE COURT:  Right.

14        MS. AUYANG:  So did Careful Shopper purchase a

15   TP-Link product that had been placed on Amazon which then

16   TP-Link purchased.  And so to request the actual contracts,

17   and again we're willing to provide the direct sales record to

18   the three buckets 2, 5, and 6, just seems too far afield of

19   what should be required under prong two.  And for the

20   [inaudible] discovery order by Judge Dearie.

21        THE COURT:  Well I guess let me just throw it back

22   on you.  What's the prejudice if you had a protective order to

23   your producing contracts?

24        MS. AUYANG:  Well, I would say that I didn't think

25   that once we look at it through what is available and that we

1  can compute if there are, for example -- so Careful Shopper

2  has only purchased goods from I believe four identifiable

3  entities, Fry's, B&H Photo, Amazon and [inaudible].  So I'm

4  not sure why [inaudible] for every [inaudible] contracts in

5  New York, first of all.  And second, [inaudible] we'll see

6  what comes out of the production for 2, 5, and 6 but for B&H

7  Photo, for example, that contract I wouldn't be so opposed to

8  providing a contract for B&H Photo.  But to say all contracts

9  just is over broad.

10         THE COURT:  Okay.  So what if it were narrowed to

11  what you would see as what prong two calls for which a nexus

12  to the claims in this case or substantial relationship, those

13  four entities that purchased the product?

14         MS. AUYANG:  So I'm sorry, I'll just look at the

15  [inaudible].  I believe it was -- I think it's actually three

16  entities.  I think it's B&H Photo, Fry's and there's one more.

17  It's not Amazon in New York because as we said that TP-Link

18  did not [inaudible] products to Amazon in New York in the time

19  frame.  So actually, it's just Fry's and B&H Photo.

20         THE COURT:  Is there a factual dispute about that or

21  do you both agree?

22         MS. AUYANG:  It's in Paragraph [inaudible] of

23  plaintiff's complaint.

24         MR. SCHLACHET:  Yeah, we bought from Amazon, Fry's

25  and B&H Photo.

25

1          THE COURT:  Okay.  So contracts from those three

2   entities if they exist.  Does that work for Ms. Auyang?

3          MS. AUYANG:  Yes, that's fine, Your Honor.  Thank

4   you.

5          THE COURT:  Mr. Schlachet, does that work for you

6   too?

7          MR. SCHLACHET:  It does, Your Honor.

8          THE COURT:  Okay.  We have a deal?

9          MS. AUYANG:  Okay.  Thank you, Your Honor.  We do.

10          MR. SCHLACHET:  I believe so, Your Honor.  Thank you

11   very much.

12          THE COURT:  Okay.  In New York it's not even quite 5

13   o'clock and you managed to come in under the wire.

14          MS. AUYANG:  Thank you.

15          THE COURT:  Okay.  So is there anything else you

16   wish to --

17          MR. SCHLACHET:  We appreciate your indulgence.

18          THE COURT:  Oh.  I'm happy to do it.

19          MR. SCHLACHET:  And we appreciate your indulgence to

20   that end.  Thank you, Your Honor.

21          THE COURT:  Happy to do it.

22          MS. AUYANG:  Yeah, thank you.

23          MR. SCHLACHET:  Will Your Honor issue a brief minute

24   entry or should we prepare something or --

25          THE COURT:  Well, I was actually thinking about that

1   myself.  So should I just note that all issues have been

2   resolved as follows?  Well, all issues were resolved in

3   specifically defendant will respond to RFPs 2, 5, and 6 and

4   will provide contracts for the three entities?  Should I just

5   name them or do we know which they are?  So it's B&H --

6               MS. AUYANG:  Fry's and Amazon.

7               THE COURT:  What's the second one?

8               MS. AUYANG:  Fry's.  Fry's Electronics.

9               THE COURT:  Okay.  How do you spell that?

10              MS. AUYANG:  F-R-Y apostrophe S.

11              THE COURT:  Okay.

12              MS. AUYANG:  Electronics.

13              THE COURT:  Got it.

14              MS. AUYANG:  B&H Photo.

15              THE COURT:  Right.

16              MS. AUYANG:  And then Amazon.  Also for RP 2, 5, and

17  6, the time frame is limited to January one, 2017 to March 31,

18  2018.

19              THE COURT:  March 31st?

20              MS. AUYANG:  Correct.  2018.

21              THE COURT:  Okay.  Got it.  All right.  I think --

22              MR. SCHLACHET:  Thank you very much, Your Honor.  A

23  good weekend to all.

24              THE COURT:  Yes.  Same to all of you guys.

25              MS. AUYANG:  Thank you.

1          THE COURT:  And if for some reason I inaccurately

2   transcribed what you just said, feel free to contact chambers.

3          MS. AUYANG:  Okay, great.  Thank you so much.

4          THE COURT:  Okay.

5          MR. SCHLACHET:  Thank you, Your Honor.

6          THE COURT:  Bye-bye.

7          MS. AUYANG:  Bye.

8          MR. SCHLACHET:  Bye.

9   (Proceedings concluded at 5:00 p.m.)

10                         * * * * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

28

1      I certify that the foregoing is a court transcript from

2  an electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5               *Mary Greco*
            _____

6                  Mary Greco

7  Dated:  February 3, 2019

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25