UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAREFUL SHOPPER, LLC, | 1:18-cv-03019-RJD-RML |
| Plaintiff, | |
| -against- | |
| TP-LINK USA CORPORATION d/b/a TP-LINK NORTH AMERICA, INC., | |
| Defendants. | |

## **AMENDED** MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TP-LINK USA CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND SUBJECT MATTER JURISDICTION

## TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ........................................................................................................... 2

A.   Plaintiff's Unauthorized Sales of TP-Link Products Through Amazon ........................ 2

B.   Plaintiff's Arbitration Agreement with Amazon ............................................................. 3

C.   TP-Link Identifies Plaintiff's Unauthorized Sales and Notifies Amazon ..................... 4

D.   Amazzia Notifies Amazon About Potentially Infringing Sales by Plaintiff ................. 4

E.   Plaintiff Threatens to Arbitrate Against Amazon ............................................................ 5

F.   Plaintiff Files Suit Instead of Initiating Arbitration ........................................................ 5

G.   The Court Grants Permission to File the Instant Motion ................................................ 6

LEGAL STANDARDS ................................................................................................. 6

ARGUMENT ................................................................................................................ 7

I.   TP-Link is Not Subject to Specific Personal Jurisdiction Under CPLR § 302(a)(1)
     Warranting Dismissal Under FRCP 12(b)(2) ............................................................... 7

     A.   There is No Substantial Relationship or Articulable Nexus Between TP-Link's In-
          State Activities and Plaintiff's Claims ................................................................. 8

     B.   Plaintiff's Novel "Circle of Commercial Activity" Theory Fails ......................... 11

II.  This Action Should Be Dismissed Under Rule 12(b)(1) for Lack of Subject Matter
     Jurisdiction Because Plaintiff Agreed to the Amazon Arbitration Provision ............. 12

     A.   Plaintiff Agreed to Arbitrate Any Claim Related to Its Amazon Sales ............... 12

CONCLUSION ............................................................................................................. 15

## TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

*Al Rushaid v. Pictet & Cie*,
   28 N.Y.3d 316, 68 N.E.3d 1 (2016) ........................................................................ 8

*Allied Dynamics Corp. v. Kennametal, Inc.*,
   965 F.Supp.2d 276 (E.D.N.Y. 2013) ....................................................................... 7

*American Radio Association, AFL–CIO v. A.S. Abell Co.*,
   58 Misc.2d 483, 296 N.Y.S.2d 21 (N.Y.Sup.Ct. 1968) ......................................... 9

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
   902 F.2d 194 (2d Cir. 1990) ..................................................................................... 6

*Bell Canto Design, Ltd. v. MSS Hifi, Inc.*,
   837 F. Supp. 2d 208 (S.D.N.Y. 2011) .................................................................... 13

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007) ..................................................................................... 9

*Brady v. Basic Research, L.L.C.*,
   101 F. Supp. 3d 217 (E.D.N.Y. 2015) ..................................................................... 7

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016) ....................................................................................... 7

*Denney v. BDO Seidman, L.L.P.*,
   412 F.3d 58 (2d Cir. 2005) ..................................................................................... 12

*Grigson v. Creative Artists Agency L.L.C.*,
   210 F.3d 524 (5th Cir. 2000) ................................................................................. 13

*Holick v. Cellular Sales of New York, LLC*,
   802 F.3d 391 (2d Cir. 2015) ................................................................................... 12

*In re A2P SMS Antitrust Litig.*,
   972 F. Supp. 2d 465 ......................................................................................... 12, 14

*In re Magnetic Audiotape Antitrust Litig.*,
   334 F.3d 204 (2d Cir. 2003) ..................................................................................... 6

*J. McIntyre Machinery, Ltd. v. Nicastro*,
   564 U.S. 873 (2011) ............................................................................................... 11

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
    673 F.3d 50 (2d Cir. 2012)................................................................................7

*Licci v. Lebanese Canadian Bank,*
    20 N.Y.3d 327 (N.Y. 2012)..............................................................................8

*Makarova v. United States,*
    201 F.3d 110 (2d Cir. 2000)..............................................................................7

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
    84 F.3d 560 (2d Cir. 1996)................................................................................8

*Orange Cty. Choppers, Inc. v. Goen Technologies. Corp.,*
    374 F. Supp. 2d 372 (S.D.N.Y. 2005)............................................................12

*Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.,*
    816 F.2d 68 (2d Cir. 1987)..............................................................................13

*Pichardo v. Zayas,*
    122 A.D.3d 699 (2d Dep't 2014)......................................................................8

*Ragone v. Atl. Video at Manhattan Ctr.,*
    595 F.3d 115 (2d Cir. 2010)............................................................................14

*Royalty Network Inc. v. Dishant.com, LLC,*
    638 F. Supp. 2d 410 (S.D.N.Y. 2009)..............................................................8

*Sira v. Morton,*
    380 F.3d 57 (2d Cir.2004)..................................................................................7

*Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Intern., Inc.,*
    198 F.3d 88 (2d Cir. 1999) *cert. denied*, 531 U.S. 815 (2000)..................14

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,*
    450 F.3d 100 (2d Cir. 2006)..............................................................................8

*Sutherland v. Ernst & Young LLP,*
    726 F.3d 290 (2d Cir. 2013)............................................................................12

*Talbot v. Johnson Newspaper Corp.*
    71 N.Y. 2d 827, 828 (N.Y. 1988) ..................................................................10

*Thomson CSF, S.A. v. Am. Arbitration Ass'n,*
    64 F.3d 773, 779 (2d Cir. 1995) ....................................................................12

*Wexler v. AT & T Corp.*,
  2018 WL 748607 (E.D.N.Y. Feb. 5, 2018) ............................................................... 5

**STATUTES**

CPLR § 302(a)(1) .................................................................................. 2, 6, 7, 8, 9, 10

**RULES**

Federal Rule of Civil Procedure 12(b)(1) ........................................................... 7, 12, 15

Federal Rule of Civil Procedure 12(b)(2) ............................................................ 6, 7, 15

Defendant TP-Link USA Corporation, which also does business as co-defendant TP-Link North America, Inc. ("TP-Link"), submits this memorandum of law in support of its Motion to Dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12.

## PRELIMINARY STATEMENT

The operative Amended Complaint is straightforward. Plaintiff Careful Shopper alleges that it was expelled from the Amazon.com marketplace platform as the result of complaints made by TP-Link USA Corporation ("TP-Link") about the unauthorized marketing and sale of TP-Link products by Plaintiff. Plaintiff claims the complaints were libel *per se*, and constitute tortious interference. *There is no dispute* that the claimed defamatory statements were made by a California-based third-party monitoring service (called "Amazzia") to Amazon in Washington. The statements were never published in New York, and were not transmitted through New York. The only relationship to New York is that the Plaintiff happens to be located in this district, which courts have consistently held is insufficient to subject a non-resident to personal jurisdiction. Further, Plaintiff signed an unequivocal, broad arbitration agreement in which it agreed to arbitrate any claim related to its use of the Amazon platform. This Court thus lacks jurisdiction.

In an effort to avoid well-settled law that New York courts may not exercise jurisdiction for out-of-state speech, Plaintiff has attempted to shift the focus to the merits, and TP-Link's unrelated and attenuated contacts with New York and supposed purchases from Plaintiff.

Although immaterial to the issue of jurisdiction, Plaintiff has made much ado about the reasons for TP-Link's complaints. Plaintiff's business practice is to find products at a discount, then to resell such products and pocket the difference. Plaintiff sold TP-Link-branded technology to downstream consumers using Amazon. The problem with this is that Plaintiff *admits it is not an authorized **reseller** of TP-Link products*. Thus, while Plaintiff represents to consumers that it sells new genuine TP-Link products, it does not in fact do so because TP-Link's warranty does ***not*** convey with such unauthorized resales. Customers are duped into buying products with no TP-Link warranty, and the conduct constitutes a violation of TP-Link's intellectual property rights

1

(and also a violation of Amazon's policies). TP-Link retains a third-party company, Amazzia, to monitor specific TP-Link products on the Amazon marketplace. According to Plaintiff, Amazon received *three* complaints about *three* TP-Link products. While the AC alleges that it only bought a "handful" of TP-Link products, in reality, Plaintiff duped over *100* customers.

Plaintiff's only basis for personal jurisdiction is under CPLR § 302(a)(1), which requires a showing that (1) TP-Link conducts business in New York, and (2) there is an articulable nexus or substantial relationship between TP-Link's in-state activity and Plaintiff's asserted claims in this action. TP-Link does not dispute that under the first prong it does business in New York.

There is simply no articulable nexus between TP-Link's in-forum conduct and the claims here. TP-Link and Plaintiff never had direct communications. Plaintiff does not dispute that there were *no* products exchanged directly between the parties and TP-Link sale of products in New York were always one step removed from Plaintiff. Because New York's long arm statute does not apply, the AC must be dismissed. Requiring TP-Link to litigate this matter in New York would also violate due process.

The second basis for dismissing this action is that this Court does not have subject matter jurisdiction because the dispute is governed by an arbitration agreement between Plaintiff and Amazon, which requires Plaintiff to arbitrate all claims related to its use of the platform. Third-party estoppel permits the application of the arbitration provision to this dispute, which arises from Plaintiff's resale of TP-Link products on Amazon.

## BACKGROUND

### A. **Plaintiff's Unauthorized Sales of TP-Link Products Through Amazon**

Plaintiff, who is located in this district (ECF No. 6, "Amended Complaint" or "AC"), ¶ 2), is a third-party seller on the Amazon.com, Inc. marketplace ("Amazon"), "which means that it is a downstream purchaser that often lists and sells goods bearing the trademarks and other intellectual properties of manufacturers and other holders of intellectual property rights." AC ¶ 1. Plaintiff purchased hundreds of TP-Link-branded technology products from Amazon, Fry's

Electronics, B&H Photo Video, Newegg, and Dell. *Id.* ¶ 23.[1] It then sold the TP-Link products to downstream consumers by sending the TP-Link products to Amazon such that: "All subject [TP-Link] products listed for sale *were at all relevant times physically held in Amazon's warehouse* under its Fulfilled by Amazon ('FBA') program, whereunder Amazon handles storage, delivery, customer complaints and other logistics." AC ¶¶ 1, 22–26 (emphasis added).[2] Plaintiff made such sales despite its own admission that it is *not* an authorized TP-Link reseller. *Id.* ¶ 31.

B. **Plaintiff's Arbitration Agreement with Amazon**

Amazon is a Delaware corporation with its principal place of business in Seattle, Washington. Declaration of Heather Auyang ("Auyang Decl."), ¶ 2, Ex. A (information concerning Amazon from the Washington Secretary of State). Plaintiff and Amazon are parties to the Amazon Services Business Solutions Agreement ("Amazon Agreement"). AC ¶ 21; Auyang Decl. ¶ 4, Ex. B. The Amazon Agreement "bind[s] both parties to the terms thereof and policies adopted thereunder." AC ¶ 21. The Amazon Agreement contains a broad, binding arbitration provision: "Amazon and [Plaintiff] both consent that **any . . . claim relating in any way to this Agreement or [Plaintiff's] use of the Services** will be resolved by binding arbitration . . . ." Auyang Decl. ¶ 4, Ex. B, § 19 (emphasis added).

The Amazon Agreement also prohibits sellers, such as Plaintiff, from offering any products in violation of the law on any Amazon sites. Specifically, it states: "You may not provide any information for, or otherwise seek to offer any *Excluded Products* on any Amazon Sites." Auyang Decl. ¶ 4, Ex. B, § S-1.1 (emphasis added). "Excluded Products means the items described on the applicable *Restricted Products* pages in Seller Central." *Id.* (Definitions (emphasis added)). The Amazon Seller Central "Restricted Products pages" warns third-party sellers: "If you supply a

---

[1] As a part of jurisdictional discovery, Plaintiff produced invoices evidencing purchases of TP-Link products from Newegg and Dell, as well as its purchase of hundreds of TP-Link products from Amazon, Fry's Electronics, and B&H Photo Video. Auyang Decl., ¶ 3.

[2] For purposes of the motion to dismiss, TP-Link accepts as true well-pleaded factual allegations. In conjunction with its motion, TP-Link submits the Declarations of Kevin Ryu and Heather Auyang that establish facts relevant to this motion.

product in violation of the law or any of Amazon's policies . . . we will take corrective actions, as appropriate, including but not limited to immediately suspending or terminating selling privileges . . . terminating the business relationship, and permanent withholding of payments."). *Id.* ¶ 5, Ex. C (Amazon Seller Central, Restricted Products pages).

Amazon also provides third-party seller a "Condition guidelines," which requires a "New Product" to convey with the "original manufacturer's warranty." *Id.* ¶ 6, Ex. D (Amazon Condition guidelines).

### C. TP-Link Identifies Plaintiff's Unauthorized Sales and Notifies Amazon

TP-Link is a California corporation with its principal place of business in Brea, California. AC ¶ 6. TP-Link sells its own products using Amazon. Declaration of Kevin Ryu ("Ryu Decl."), ¶ 3. For such sales, TP-Link either acts as the seller (in which case Amazon fulfills the order), or uses Amazon as an authorized retailer. *Id.* TP-Link also sells through retailers and distributors in New York. *Id.*

TP-Link has contracted with a Reseda, California based company called Amazzia to monitor unauthorized sales of its products on Amazon. *Id.* ¶ 4. Amazzia monitors certain TP-Link products based on the Amazon Standard Identification Number ("ASIN"), including, as relevant here, the following ASINs: (1) B00PDLRHFW; (2) B0168G0KZY; and (3) B010S6SG3S. *Id.* ¶ 5. When Amazzia identifies unauthorized resellers using the ASIN, it uses a TP-Link email address ("Compliance USA") to send emails to Amazon. *Id.* ¶ 6.

### D. Amazzia Notifies Amazon About Potentially Infringing Sales by Plaintiff

Plaintiff alleges that between March and April 2018, TP-Link (in reality Amazzia on TP-Link's behalf) sent three complaints to Amazon that Plaintiff sold three TP-Link-branded products that infringed on TP-Link's intellectual property rights. AC ¶¶ 27, 32. Following the complaints, Plaintiff received a notice from Amazon on March 31, 2018, about two TP-Link products: (1) TP-Link Archer AC1900 Smart WiFi Router - Dual-Band Gigabit (C9) (ASIN: B00PDLRHFW); and (2) TP-Link Archer AC1200 Reliable Dual-band WiFi Router (C50) (ASIN: B0168G0KZY). AC

4

¶ 27. Amazon's notice states: (1) "We are contacting you because we received a report from a rights owner that you are listing counterfeit items;" (2) "If you believe that the reported content does not infringe the rights owner's **intellectual property rights**, you may email notice-dispute@amazon.com with supporting information;" and (3) "We consider allegations of **intellectual property infringement** a serious matter and your account is under review. If we receive more complaints about your listings, we may not allow you to sell on Amazon.com. To learn more about this policy, search for '**Intellectual Property Violations**' in Seller Central Help." AC ¶ 27 (emphasis added).

Plaintiff alleges that it also received a second notice from Amazon on April 9, 2018, concerning another TP-Link product—TP-Link AC1750 WiFi Range Extender with High Speed Mode and Intelligent Signal Indicator (RE450) (ASIN: B010S6SG3S). AC ¶ 32. The April 9, 2018 notice contained the same quoted language as the March 31, 2018 notice. *Id.* Amazon suspended Plaintiff's authorization to sell on its platform. *Id.* ¶¶ 33-37.

### E.  **Plaintiff Threatens to Arbitrate Against Amazon**

Adam Starke[3], Plaintiff's owner and managing member (AC ¶ 31) claims he tried to "exhaust[] all possible administrative options at Amazon." *Id.* As part of those efforts, he sent a letter on May 17, 2018 to Amazon's General Counsel stating: "[i]t is my genuine, heartfelt hope that through your offices we can resolve this serious matter. If we cannot, *I may request arbitration* in accordance with" the Amazon Agreement. Auyang Decl. ¶ 7, Ex. E (Starke Letter to Amazon General Counsel) (emphasis added); AC ¶ 37.

### F.  **Plaintiff Files Suit Instead of Initiating Arbitration**

On May 22, 2018, Plaintiff filed its Complaint against TP-Link USA Corporation, asserting claims for libel *per se* and interference with existing and prospective business relationships. The

---

[3] Starke is a frequent litigant in this district. For over a decade, he has filed at least *seven* putative class actions as the named plaintiff. *See* Auyang Decl. ¶ 8, Ex. F (chart of Starke's class action litigations). Mr. Schlachet, who Starke calls "Tatty" (the Yiddish word for father), has represented Starke in those putative class actions, and is also counsel here. *See Id.* ¶ 9, Ex. G. Such conduct raises ethical issues. *See Wexler v. AT & T Corp.*, Case No. 15–cv–0686-FB-PK, 2018 WL 748607, *3 (E.D.N.Y. Feb. 5, 2018) (finding former class counsel's spouse was an inadequate class representative due to the conflict of interest created by the relationship).

basis for the complaint is TP-Link's complaints that supposedly caused Plaintiff's "permanent expulsion" as a seller on the Amazon website." ECF No. 1, Complaint, ¶¶ 2-3. On June 4, 2018, Plaintiff filed its Amended Complaint adding TP-Link North America Inc. as a co-defendant. (ECF No. 6, "Amended Complaint" or "AC.") TP-Link North America Inc. is a fictitious business name of TP-Link USA Corporation. *Id.*, ¶ 7.[4]

G. **The Court Grants Permission to File the Instant Motion**

On August 3, 2018, TP-Link filed a 3-page letter with the Court seeking permission to move to dismiss for lack of personal jurisdiction and based on the arbitration provision. ECF No. 15. On August 10, Plaintiff responded and explained that its sole basis for personal jurisdiction is under CPLR § 302(a)(1). ECF No. 19 at 1-2 ("[C]ourts will entertain defamation cases against non-domiciliaries so long as jurisdiction exists under [CPLR] § 302(a)(1)." Specifically, Plaintiff explained its first basis for personal jurisdiction is a "circle of commercial activity closely related to the defamations at suit." *Id.* at 2. As a second basis, Plaintiff contends that TP-Link "sells its goods on amazon.com, either in its own right or as a First-Party Seller with goods 'sold and fulfilled' by Amazon [likely including products purchased by Plaintiff in New York for which it was charged with counterfeit listing]." *Id.*

**LEGAL STANDARDS**

On a motion to dismiss for lack of personal jurisdiction brought pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (citation omitted). Prior to discovery, a plaintiff can prove personal jurisdiction based on "good faith . . . legally sufficient allegations of jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196-97 (2d Cir. 1990) (citation omitted). However, where the parties have engaged in jurisdictional discovery, but the court has not conducted an evidentiary hearing—

---

[4] Plaintiff also alleges that "One Tom Lei (Screen name "amazon91773"), believed to be an employee of [TP-Link] . . . purchased in his own name (using [TP-Link] funding or reimbursement) [TP-Link] products from [Plaintiff] on approximately 20 occasions, without disclosure of TP-Link involvement, between [December 2017 to] December 2017. Exhibit 1 hereto." AC ¶¶ 11-12.

as is the case here—the plaintiff's "*prima facie* showing must be factually supported." *Id.* In examining plaintiff's jurisdictional showing, "a court may rely on materials beyond the pleadings." *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 229 (E.D.N.Y. 2015) (citation omitted). While "pleadings and affidavits are to be construed in the light most favorable to plaintiff, the non-moving party, and all doubts are to be resolved in plaintiff's favor," *Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F.Supp.2d 276, 287 (E.D.N.Y. 2013) (citation omitted), the Court need not "draw 'argumentative inferences' in the plaintiff's favor," nor "accept as true a legal conclusion couched as a factual allegation." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (citations omitted).

"A case is properly dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). If the motion is "based solely on the allegations of the complaint or the complaint and exhibits attached to it" a court determines whether the documents set forth "facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016) (citation and quotation marks omitted); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir.2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." (internal citations omitted)). A court draws "all reasonable inferences in favor of the Plaintiff in ruling on a 12(b)(1) motion." *Carter*, 822 F.3d at 56-57 (citation and quotation marks omitted).

## ARGUMENT

I. **TP-Link is Not Subject to Specific Personal Jurisdiction Under CPLR § 302(a)(1) Warranting Dismissal Under FRCP 12(b)(2)**

Plaintiff bears the burden of establishing jurisdiction based on a two-part analysis that: (1) there is jurisdiction under New York law; and (2) the "assertion of jurisdiction [] comports with

requirements of due process." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (citation omitted). Plaintiff acknowledges that its *only* asserted basis for personal jurisdiction is specific jurisdiction under CPLR § 302(a)(1). *See* ECF No. 22.

A. **There is No Substantial Relationship or Articulable Nexus Between TP-Link's In-State Activities and Plaintiff's Claims**

Under CPLR § 302(a)(1), a defendant is subject to specific jurisdiction for torts committed out-of-state: (1) if the defendant "transacts any business" in the state; and (2) there is an "articulable nexus" or "substantial relationship" between the defendant's in-state activity and the claim asserted. *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 334, 339-40 (N.Y. 2012) (citations omitted); *see also Pichardo v. Zayas*, 122 A.D.3d 699, 701-02 (2d Dep't 2014). "By contrast, a connection that is merely coincidental is insufficient to support jurisdiction." *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 422-23 (S.D.N.Y. 2009) (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103–04 (2d Cir. 2006) (internal quotation marks omitted). Although the test "does not require causation," it does require "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 329, 68 N.E.3d 1, 11 (2016) (quoting *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 328 (2012)). An articulable nexus exists where the claim is "in some way arguably connected to the transaction." *Id.* (quoting *Licci*, 20 N.Y.3d at 340).

TP-Link does not dispute the first prong of the *Licci* analysis, and has readily acknowledged that it transacts business in New York. *See* ECF No. 15 at 1–2; ECF No. 23 at 2. The only jurisdictional dispute is whether Plaintiff can meet its burden of demonstrating the second *Licci* prong—that there is an articulable nexus or substantial relationship between TP-Link's in-state activity and the defamation and tortious interference claims asserted in this action. Plaintiff has not met and cannot meet this burden.

8

With the benefit of jurisdictional discovery, it is now clear that there were no direct communications between TP-Link and Plaintiff. Nor did the parties have an ongoing business relationship. In fact, discovery has revealed that *there were no products exchanged directly between the parties*. The only conduct connecting TP-Link and Plaintiff is the out-of-state transmission of complaints about Plaintiff to Amazon.

1. An allegedly defamatory out-of-state statement does not give rise to suit in New York

It is well established that an out-of-state speech about a New York resident does not create a "substantial nexus" as required by CPLR § 302(a)(1). The Second Circuit's analysis in *Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) is instructive. There, the plaintiff, a New York transportation company, claimed an out-of-state website was subject to jurisdiction here because it published allegedly defamatory statements about the plaintiff. *Id*. at 253. The defendant's website's "primary function and business [was] to publish negative information about companies, including a 20 percent New York base, and [defendant's website] visitors make donations solely because of the overwhelming negative comments and content on the website." *Id.* at 254-55 (citation omitted). That was insufficient. Even if the website's operations qualified as "transact[ing] any business within the state" under section 302(a)(1), the plaintiffs claim did not "'arise from' the [defendant's website] acceptance of donations." *Id*. at 254-255 (citation omitted). Instead, the claims were unquestionably based on allegedly defamatory out-of-state speech that happened to be about a New York resident. *See also American Radio Association, AFL–CIO v. A.S. Abell Co.,* 58 Misc.2d 483, 296 N.Y.S.2d 21 (N.Y.Sup.Ct. 1968) (distribution of newspapers in New York insufficient because the publication "which underlie[d] the alleged grievances occurred in Baltimore"). The same is true here. The allegedly defamatory emails giving rise to the asserted claims were *never* published in New York, directed at New York, or transmitted through New York. Instead, the three at-issue complaints were sent from California-based Amazzia to Washington-based Amazon. Ryu Decl., ¶ 6; Auyang Decl., ¶ 1.

9

### 2.   There is no link between TP-Link's in-state activity and the at-issue claims

In an effort to circumvent the long-standing rule, Plaintiff has focused its efforts on trying to obtain evidence of TP-Link's in-state activity, including its shipment of goods to third-party resellers and purchase of goods from Amazon. That too fails.

TP-Link is a distributor of technology products and maintains distribution channels in New York. Ryu Decl., ¶ 3. In other words, it "transacts business" in the state. But that only satisfies the *first Licci prong, which is not in dispute.* Transacting business in a state does not create an "articulable nexus" for every lawsuit unrelated to those in-state transactions. TP-Link's distribution may, at most, subject it to personal jurisdiction for claims that arise directly out of sales of those products.

Plaintiff's allegation that a TP-Link employee purchased some products from Plaintiff (AC ¶¶ 11-12) is similarly unavailing because the claims here do not arise out of those sales. In *Talbot v. Johnson Newspaper Corp.*, the Court of Appeals addressed the exercise of jurisdiction under section 302(a)(1) where there was some pre-existing relationship between the parties. 71 N.Y. 2d 827, 828 (N.Y. 1988). A California resident parent wrote two letters to the president and board of trustees of St. Lawrence University in New York, which his daughter attended, claiming his daughter had seen the plaintiff, a school athletic coach, drunk at a fraternity party. *Id.* at 828-29. A newspaper later published the letter, which it had received from one of the trustees. *Id.* Even though the statements resulted from the daughter's enrollment at a New York college, "there was no showing that [] there was the required nexus between the [defendants'] New York 'business' and the [defamation] cause of action." *Id*. at 829-30.

The AC does not arise out of TP-Link's sales to third-parties or an employee's purchases from Plaintiff through Amazon. The AC alleges separate and independent conduct—i.e., Plaintiff's marketing of TP-Link's products using TP-Link's intellectual property rights and the subsequent complaints that resulted in its expulsion from the platform. Like the defendants in *Talbot*, TP-

Link's in-state activities—its sales to third-parties in New York—cannot establish an articulable nexus to the present defamation cause of action.

B. **Plaintiff's Novel "Circle of Commercial Activity" Theory Fails**

Because TP-Link's in-state conduct cannot support the exercise of jurisdiction, Plaintiff wishes to focus on *its own* conduct as the basis for a jurisdictional hook. To that end, it has come up with a convoluted "circle of commercial activity" theory. AC ¶¶ 11-12; ECF No. 19 at 2 (Plaintiff's letter to the Court explaining its "circle of commercial activity" theory). In Plaintiff's theory: (1) TP-Link sold products to a third-party in New York; (2) Plaintiff supposedly purchased products from some of those third-parties in New York; (3) Plaintiff then turned around and offered the products for re-sale using the Amazon marketplace; (4) Amazon then sold the products to TP-Link and others; (5) Plaintiff's marketing ultimately led to the complaints and its expulsion. *Id.*

Plaintiff's argument is nonsensical. It is not TP-Link's sale of products that gives rise to the AC. Any "circle" was broken when Plaintiff went from being a consumer to marketing the products for sale on Amazon in a way that infringed TP-Link's intellectual property rights. Tellingly, Plaintiff has offered no authority supporting its theory, and TP-Link has been unable to locate any. Indeed, crediting Plaintiff's theory would subject a company like TP-Link to personal jurisdiction in every state for any claim that in some way tangentially relates to distributed products. Courts have consistently rejected such broad exercises of jurisdiction. *See, e.g., J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 880-87 (2011) (rejecting jurisdiction in New Jersey for injury caused by defendant's product, which was sold in New Jersey by a nationwide distributor); *id.* at 888, 891-92 *(*Breyer, J., concurring) (permitting jurisdiction "would permit every State to assert jurisdiction in a products-liability suit against any domestic manufacturer," which does not comport with due process requirements).

There is no articulable nexus between TP-Link's in-state conduct and the claims here, and thus no personal jurisdiction.

II.   **This Action Should Be Dismissed Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction Because Plaintiff Agreed to the Amazon Arbitration Provision**

Courts lack subject matter jurisdiction over disputes governed by arbitration agreements. *See Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 292 (2d Cir. 2013); *Orange Cty. Choppers, Inc. v. Goen Technologies. Corp.*, 374 F. Supp. 2d 372, 372-75 (S.D.N.Y. 2005) (dismissing a complaint pursuant to FRCP 12(b)(1) because the action was governed by an arbitration agreement). A court must enforce an arbitration agreement if (1) the parties agreed to arbitrate; and (2) the scope of the arbitration clause encompasses the claims at issue. *Holick v. Cellular Sales of New York*, *LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (citation omitted).

A.   **Plaintiff Agreed to Arbitrate Any Claim Related to Its Amazon Sales**

Here, Plaintiff states that it and Amazon are parties to the Amazon Agreement, which "bind[s] both parties to the terms thereof and policies adopted thereunder." AC ¶ 21. Though TP-Link is not a signatory to the Amazon Agreement, the equitable estoppel doctrine precludes Plaintiff from avoiding the agreement it signed.

A third-party may enforce an arbitration agreement against a signatory to the agreement if its claims against the signatory are "intertwined" with arbitrable claims. *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 70 (2d Cir. 2005) (citations omitted). Under the Second Circuit's "intertwinedness" test, Courts examine whether (1) "claims arise under the subject matter of the [arbitrable] agreement, and (2) there is a close relationship between the signatory and the non-signatory party." *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 476 (citations and quotation marks omitted); *Thomson CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995).

1.   The at-issue claims arise under the "subject matter" of the arbitrable agreement

Here, the Amazon Agreement contains a broad, binding arbitration provision: "Amazon and [Plaintiff] both consent that **any . . . claim relating in any way to this Agreement or [Plaintiff's] use of the Services** will be resolved by binding arbitration . . . ." Auyang Decl. ¶ 4, Ex. B, § 19 (emphasis added). As to the first prong, there is no doubt that Plaintiff's claims arise

under the subject matter of the Amazon Agreement. The Amazon Agreement orders arbitration of claims that "relat[e] . . . to [Plaintiff's] use of the Services." *Id*. Plaintiff's claims against TP-Link—that a TP-Link representative's correspondence with Amazon resulted in Plaintiff's expulsion from the Amazon marketplace—are entirely premised on Plaintiff's use of Amazon's e-commerce services. *See, e.g., Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526-30 (5th Cir. 2000) (compelling arbitration where signatory claimed non-signatory tortiously interfered with contract containing arbitration provision). Indeed, it would be impossible to litigate this action without substantial involvement with Amazon, as this case would necessarily require extensive discovery into Amazon's conduct, including its reasons for terminating its relationship with Plaintiff.

Furthermore, Plaintiff's claims fall squarely within the subject matter of the Amazon Agreement because Plaintiff sold counterfeit TP-Link products pursuant to and in violation of the terms therein. The Amazon Agreement prohibits signatories from offering any products in violation of the law on any Amazon sites and details possible actions Amazon may take if such policies are violated. *See* Auyang Decl. ¶ 4, Ex. B (Amazon Agreement § S-1.1 and definition of "Excluded Products"); Ex. C (Amazon Seller Central, "Restricted Products" policy stating, "If you supply a product in violation of the law or any of Amazon's policies, including those listed on the Restricted Products pages, we will take corrective actions.")) Here, Amazon sent two notices to Plaintiff that its actions constitute a violation of Amazon's IP rights policy. AC ¶¶ 27, 32.

Notably, Plaintiff has insisted on maintaining this action even though it was informed by Amazon and TP-Link that its activities infringe on TP-Link's intellectual property rights. Specifically, TP-Link does not extend warranty coverage to products sold by unauthorized resellers, rendering such products materially different from those sold by authorized resellers. The sale of materially different products constitutes trademark infringement. *See Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*, 816 F.2d 68, 71-73 (2d Cir. 1987); *Bell Canto Design, Ltd. v. MSS Hifi, Inc.*, 837 F. Supp. 2d 208, 225-26 (S.D.N.Y. 2011). Moreover, Plaintiff has violated

Amazon's third-party seller a "Condition guidelines," which requires a "New Product" to convey with the "original manufacturer's warranty." Auyang Decl. ¶ 6, Ex. D (Amazon Condition guidelines).

2.  <u>There is a "close relationship" between the signatory and the non-signatory party</u>

As for the second prong, there is a close relationship between Plaintiff and TP-Link. To determine whether the relationship between two parties are sufficiently close as to satisfy the "intertwinedness" test, courts consider whether the circumstances "support[] the conclusion that [the signatory] had consented to extend its agreement to the [non-signatory], or [] [make] it inequitable for [the signatory] to refuse to arbitrate." *In re A2P*, 972 F. Supp. 2d at 478-79 (citation and quotation marks omitted); *Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Intern., Inc.*, 198 F.3d 88, 97 (2d Cir. 1999) *cert. denied*, 531 U.S. 815 (2000) (finding that courts should not be reluctant to impose contractual obligations to arbitrate on non-contracting parties when the contracting party is "trying to escape its obligation to arbitrate."). In particular, a plaintiff's knowledge that its activities pursuant to an arbitrable agreement will give rise to a relationship with a non-signatory is sufficient to "allow[] the latter to avail itself of the arbitration agreement." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 128 (2d Cir. 2010).

Here, in signing the Amazon Agreement, Plaintiff knew full well that it was agreeing to arbitrate all disputes relating to its use of the Amazon platform. Therefore, when Plaintiff chose to offer TP-Link products for sale on Amazon, Plaintiff initiated a relationship with TP-Link that directly implicated and relied upon Plaintiff's use of Amazon—in other words, it was conducting business pursuant to an arbitrable agreement knowing that such sales would create a relationship with TP-Link. In so doing, Plaintiff voluntarily extended the Amazon Agreement's arbitration clause to TP-Link such that it would be inequitable for the Court to allow Plaintiff to escape its obligation to arbitrate this dispute. Indeed, Mr. Starke's letter to Amazon's General Counsel stated that with respect to the dispute involving TP-Link that he may "*may request arbitration*" pursuant

14

to the Amazon Agreement. Auyang Decl. ¶ 7, Ex. E (Starke letter to Amazon General Counsel) (emphasis added); AC ¶ 37.

## **CONCLUSION**

Based on the foregoing, the Amended Complaint must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(1).

Dated: February 19, 2019                    LTL ATTORNEYS LLP


                                 By:    */s/ Heather Auyang*
                                        Joedat Tuffaha
                                        Heather Auyang
                                        Prashanth Chennakesavan

                                        *Attorneys for TP-Link USA Corp.*
                                        *d/b/a TP-Link North America, Inc.*