UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAREFUL SHOPPER, LLC,<br><br>                    Plaintiff,<br><br>-against-<br><br>TP-LINK USA CORPORATION d/b/a TP-LINK NORTH AMERICA, INC.,<br><br>                    Defendants. | 1:18-cv-03019-RJD-RML |

**TP-LINK USA CORPORATION'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION AND SUBJECT MATTER JURISDICTION**

## **TABLE OF CONTENTS**

Page(s)

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.      TP-Link's Use of the Amazon.com Marketplace to Buy Plaintiff's Products is Insufficient to Confer Personal Jurisdiction in New York .......................................... 2

          A.      Plaintiff Used "Fulfilled By Amazon" to Sell Products on the Amazon.com Marketplace Such That TP-Link Never Dealt Directly with Plaintiff ........................... 2

                1.      Even if Plaintiff was listed as the seller on Amazon, such listing does not indicate its location was in New York ............................................. 4

                2.      Any Products Shipped to or Returned by TP-Link were through the Amazon.com Marketplace using FBA such that TP-Link did not interface with Plaintiff ........................................................................... 4

                3.      Plaintiff's retention to title of the goods is irrelevant as to whether TP-Link's use of the Amazon.com marketplace constitutes doing business with Plaintiff in New York ...................................................................... 6

    II.     Careful Shopper has Provided No Evidence that TP-Link had Knowledge Plaintiff was located in New York to Support Its Claims for Libel *Per Se* and Tortious Interference ................................................................................................... 6

    III.    There is no "Circle of Commercial Activity" Such that TP-Link Conducted Business with Plaintiff in New York ........................................................................................ 7

IV. Plaintiff's Claims are Subject to the Arbitration Provision in
the Amazon Agreement……………………………………………………………9

　　A. Plaintiff's Claims against TP-Link Arise under the Amazon Agreement and
are Subject to Its Arbitration Provision ........................................................................... 9

　　B. Plaintiff Claims a Close Relationship Exists Between the Parties .................. 10

CONCLUSION ....................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Cases**

*Am. Radio Ass'n, AFL–CIO v. A.S. Abell Co.*,
 296 N.Y.S.2d 21 (N.Y.Sup.Ct. 1968) ........................................................................................ 2

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
 902 F.2d 194 (2d Cir. 1990) ....................................................................................................... 3

*Bankers Conseco Life Ins. Co. v. Feuer*,
 No. 16-cv-7646 (ER), 2018 WL 1353279 (S.D.N.Y. Mar. 15, 2018) ........................................ 9

*Best Van Lines, Inc. v. Walker*,
 490 F.3d 239 (2d Cir. 2007) ....................................................................................................... 2

*Erie Ins. Co. v. Amazon.com*,
 No. 16-cv-02679 (RWT) (D. Md. Jan. 11, 2018), ECF No. 65 .................................................. 6

*Gen. Elec. Capital Corp. v. Adams Commc'ns Corp.*,
 No. 91-cv-2729 (CSH), 1991 WL 190594 (S.D.N.Y Sept. 18, 1991) ....................................... 7

*Giuliano v. Barch*,
 No. 16-cv-0859 (NSR), 2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) ................................. 6, 7

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,
 763 F.2d 55 (2d Cir. 1985) ......................................................................................................... 7

*In re A2P SMS Antitrust Litig.*,
 972 F. Supp. 2d 465 (S.D.N.Y. 2013) ........................................................................................ 9

*Licci v. Lebanese Canadian Bank*,
 20 N.Y.3d 327 (N.Y. 2012) ........................................................................................................ 3

*Medidata Sols., Inc. v. Veeva Sys.*,
 748 Fed.Appx. 363 (2d Cir. 2018) ........................................................................................... 10

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
 No. 13-cv-1932 (RSM), 2015 WL 4394673 (W.D. Wash. July 16, 2015) ................................ 6

*Pichardo v. Zayas*,

    122 A.D.3d 699 (N.Y. App. Div. 2014) ................................................................................... 7

*Sarhank Group v. Oracle Corp.*,

    404 F.3d 657 (2d Cir. 2005) .................................................................................................... 9

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,

    542 F.3d 354 (2d Cir. 2008) .................................................................................................. 10

*SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n*,

    963 N.E.2d 1226 (N.Y. 2012) ................................................................................................. 8

*Talbot v. Johnson Newspaper Corp.*,

    71 N.Y.2d 827 (N.Y. 1988) .................................................................................................... 2

**Statutes**

CPLR § 302 (a)(1) ................................................................................................................ 1, 2, 7

**Rules**

Federal Rule of Appellate Procedure 32.1 .................................................................................. 10

Federal Rules of Civil Procedure 12(b)(2) and 12(b)(1) ............................................................. 11

Second Circuit's Local Rule 32.1.1 ............................................................................................. 10

**INTRODUCTION**

After months of jurisdictional discovery, the facts of this case remain the same as they were when Plaintiff Careful Shopper ("Plaintiff") filed its Amended Complaint. It is *undisputed* that its claims for libel *per se* resulting in tortious interference with business relationships are based entirely on out-of-state speech that happened to be about a New York resident. Jurisdiction in New York is simply not available under CPLR § 302(a)(1). In a failed effort to avoid black-letter law, Plaintiff tries to weave together a series of disparate transactions that supposedly connect TP-Link to New York. None of those are related to the claimed libelous speech. But even setting aside that fatal flaw, it is clear that even the attenuated transactions do not give rise to jurisdiction.

Plaintiff's arguments face at least two fundamental insurmountable hurdles. First, under Plaintiff's theory, a buyer (here, TP-Link) using a third-party internet marketplace, such as Amazon.com and eBay, would subject the buyer to personal jurisdiction where the seller (Plaintiff) resides. In other words, under Plaintiff's theory, all buyers who purchase products through the internet consent to suit where the seller happens to be located. There is absolutely no support for this argument. Indeed, it flies in the face of well-established precedent that requires inquiry into the *defendant's* knowing in-state conduct.

Second, Plaintiff has failed to present any evidence TP-Link *had knowledge* it was conducting business with Plaintiff located in New York, much less knowledge sufficient to support an exercise of personal jurisdiction under CPLR § 302(a)(1). Indeed, all dealings related to Plaintiff occurred between TP-Link and the Amazon.com marketplace platform. In essence, no matter how many times Plaintiff states that TP-Link made purchases from Plaintiff "in New York" does not make it so. There is no evidence that TP-Link made any purchases "in New York" or even with knowledge that it was purchasing from a New York business. TP-Link made purchases in California using Amazon, a nationwide internet retail platform that shipped the goods to California. It is *Plaintiff* that made a sale into California by offering its products to a California customer, not the other way around.

1

Finally, Plaintiff's claims should be subject to the Amazon arbitration provision under the doctrine of third-party estoppel because this entire dispute relates to Plaintiff's use of the Amazon.com marketplace platform.

## ARGUMENT

I. **TP-Link's Use of the Amazon.com Marketplace to Buy Plaintiff's Products is Insufficient to Confer Personal Jurisdiction in New York**

Plaintiff acknowledges that "both counts [libel per se and tortious interference with business relationships] of the complaint are founded in defamation and libel." Plaintiff's opposition ("Opp.") at 3. Thus, the issue under CPLR § 302 (a)(1) is whether Plaintiff's defamation cause of action arises from or relates to TP-Link's in-state activities. As TP-Link's motion to dismiss ("Motion" or "Mot.") squarely demonstrates, the answer is no. *See* Mot. at 7-11. There is no dispute the allegedly defamatory statements were never published in New York, directed towards New York or transmitted through New York.[1]

Much, if not all, of Plaintiff's opposition misses this point by focusing on who is the seller of products purchased by TP-Link using the Amazon.com marketplace—Amazon or Plaintiff— but TP-Link has never asserted that Amazon is the seller.[2] Regardless as discussed below, a buyer's use of the Amazon.com marketplace cannot confer personal jurisdiction where the seller resides.

A. **Plaintiff Used "Fulfilled By Amazon" to Sell Products on the Amazon.com Marketplace Such That TP-Link Never Dealt Directly with Plaintiff**

Plaintiff argues that TP-Link's purchases through the Amazon.com online marketplace resulted in actually transacting business in New York with Plaintiff sufficient to confer personal

---

[1] Plaintiff attempts to distinguish *Talbot v. Johnson Newspaper Corp.*, 71 N.Y.2d 827 (N.Y. 1988) based on the temporal difference between when the defendant attended college in New York and the letters sent to the college giving rise to the defamation cause of action as compared to the timing of TP-Link's purchases through the Amazon.com marketplace. Opp. at 15-16; Mot. at 10-11. Plaintiff misses the point. *Talbot* stands for the proposition that the AC here does not arise out of TP-Link's in-state contacts, i.e., TP-Link had no in-state interactions with Plaintiff that establish an articulable nexus to the present defamation and tortious interference causes of action. Notably, Plaintiff simply ignores *Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) and *Am. Radio Ass'n, AFL–CIO v. A.S. Abell Co.,* 296 N.Y.S.2d 21 (N.Y.Sup.Ct. 1968) relied upon by TP-Link. *See* Mot. at 9.

[2] Indeed, this is why parties selling products on Amazon (such as Plaintiff) are referred to as "third-party sellers." ECF No. 6 ("Amended Complaint" or "AC") at ¶ 1 ("Plaintiff is a third-party seller on Amazon.").

jurisdiction under the second prong of *Licci*—i.e., whether there is an "articulable nexus" or "substantial relationship" between the defendant's in-state activity and the claims asserted. *See Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 334, 339-40 (N.Y. 2012). This argument fails for good reason. First, there is no dispute that there were no direct transactions between the parties. Plaintiff Appendix, Ex. 7, X-38 (Nov. 30, 2018 Hrg. Tr. before Magistrate Judge Levy) at 11:23-25 (Plaintiff stated that "there is no information between [Plaintiff] and TP-Link because [Plaintiff] never had a transaction with TP-Link.").[3]

Second, Plaintiff acknowledges all its sales were conducted using "Fulfilled by Amazon," such that "[a]ll subject [TP-Link] products listed for sale were at all relevant times ***physically held*** in Amazon's warehouse under its Fulfilled by Amazon ('FBA') program, whereunder Amazon handles storage, delivery, customer complaints and other logistics." AC ¶ 26 (emphasis added).[4] In other words, TP-Link only interfaced with Amazon in making any purchases and such interactions cannot constitute a transaction of business with Plaintiff in New York.[5] Plaintiff fails to cite a single case supporting its proposition that a buyer using a third-party online marketplace is subject to personal jurisdiction where the seller is located.

Plaintiff's "factual" allegations[6] go to great lengths to argue that TP-Link's purchase of goods using the Amazon online marketplace constitutes a *direct* sale from Plaintiff *in New York* to TP-Link because: (1) Plaintiff is identified as the seller on the Amazon.com marketplace (Opp. at

---

[3] Plaintiff intentionally mischaracterizes and takes out of context a statement made in correspondence related to jurisdictional discovery to contend that TP-Link "concedes" it transacted business in New York with Plaintiff. Opp at 5. This is not accurate. TP-Link offered to produce any documents (if any) of purchases by TP-Link (or its employees) *directly* from Plaintiff. As Plaintiff is well-aware, jurisdictional discovery showed that all products purchased from Plaintiff were indirectly made through the Amazon.com marketplace platform. *See* Suppl. Auyang Decl. ¶ 2, Ex. A.

[4] *See also* Opp. at 7 ("Amazon provides fulfillment services for the products, such as storage and shipping."); Starke Decl. ¶ 21 ("The shopper was always told 'Sold by [Plaintiff], Fulfilled by Amazon.'").

[5] In sharp contrast, Plaintiff did *not* use "a second protocol . . . ***Fulfilled by Merchant ('FBM')***, whereunder the ***individual third party seller itself*** handles storage, delivery, customer complaints and other logistics." Opp. at 2, fn. 6 (emphasis added).

[6] Plaintiff's "evidence" is belied by its own contradictory statements, lacks foundation, assumes facts not in evidence, is based on attorney conjecture and legal argument, and/or calls for speculation, and therefore should be disregarded. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196-97 (2d Cir. 1990) (citation omitted) (finding "[a]fter discovery, the plaintiff's *prima facie* showing . . . must be factually supported.")

14-15); (2) TP-Link was shipped goods from Plaintiff and returned some goods to Plaintiff (Opp. at 14-18); and (3) Plaintiff retained title to the goods (Opp. at 7-8). These arguments are nothing more than a red-herring.

1. <u>Even if Plaintiff was listed as the seller on Amazon, such listing does not indicate its location was in New York</u>

Plaintiff states it had a storefront on Amazon.com—but presents no evidence, such as printouts of the storefront. Opp. at 1. Plaintiff speculates that "[TP-Link] could not purchase and return a single TP-Link product . . . . without first accessing amazon.com and actuating a hyperlink to bring him to Careful Shopper's virtual storefront." Starke Decl. ¶ 22; Opp. at 1, 6. But, purchasing from a third-party seller on Amazon.com does not require navigating to the third-party seller's storefront, rather a buyer can simply add a product to its cart from the product details page (*see* Opp. at 15), which is on "a pre-existing product detail page on which [Plaintiff] could list through entry of a Universal Product Number" (Starke Decl. at ¶ 21). Regardless, Plaintiff has provided no evidence that anywhere on Amazon (storefronts, hyperlinks or otherwise) identifies *the physical location* of the third-party seller. Essentially, the Amazon.com marketplace is an online platform to purchase goods from an anonymous seller who could make up any name, e.g., "Careful Shopper," with no indication of the seller's physical location.

2. <u>Any Products Shipped to or Returned by TP-Link were through the Amazon.com Marketplace using FBA such that TP-Link did not interface with Plaintiff</u>

Plaintiff asserts that TP-Link "purchased, canceled and returned products to and from [Plaintiff]" (Opp. at 14-15, 18-19; *see also* Starke Decl. ¶ 15 (Plaintiff "was sending [TP-Link] products to [TP-Link's] own warehouse")). This is not accurate because, as discussed above, FBA requires that shipping and returns of goods are handled by Amazon. *See* Opp. at 2 ("the physical products were shipped from one of Amazon's fulfillment centers."); Starke Decl. ¶ 20 ("[TP-Link] . . . [harmed Plaintiff] by ***buying, opening and returning*** multiple products to [Plaintiff] ***through Amazon FBA***") (emphasis added).

4

Plaintiff merely speculates without any factual basis that TP-Link must have made "test purchases" of TP-Link products from Plaintiff. Opp. at 7-8; 12-13. Specifically, Plaintiff concludes that any complaint to Amazon requires an "Amazon.com Order ID of a test buy" and "Photos of the item(s) received in the test buy." Opp. at 13. As detailed in TP-Link's Motion, TP-Link contracted with a Reseda, California based company called Amazzia to monitor unauthorized sales of its products on Amazon and report such violations to Amazon. Mot. at 4; *see also* Ryu Decl. ¶ 4; Supplemental Declaration of Kevin Ryu ("Suppl. Ryu Decl.") ¶¶ 3-4. However, TP-Link does not provide Amazzia with either a "test buy" or photos for Amazzia to report complaints. *See* Suppl. Ryu Decl. ¶ 2. As the Amazzia contract shows, Amazzia monitors certain TP-Link products based on the Amazon Standard Identification Number ("ASIN"), including the following ASINs: (1) B00PDLRHFW; (2) B0168G0KZY; and (3) B010S6SG3S. *See* Suppl. Ryu Decl. ¶ 3, Ex. A; *see also* Mot. at 4; Ryu Decl. ¶ 5. When Amazzia identifies unauthorized resellers using the ASIN, it sends a complaint to Amazon. *See* Suppl. Ryu Decl. ¶ 4. Amazzia requires TP-Link provide it with an email account using an email address in the format "compliance@brandname.com" (in this case compliance-usa@tp-link.com, which also reflects as "Compliance USA"). *Id.*[7] *see also* Mot. at 4; Ryu Decl. ¶ 6.

Regardless, Plaintiff's "test buy" argument is irrelevant to a personal jurisdiction analysis because any such purchases were made through the Amazon.com marketplace platform by FBA and do not constitute contact with New York. Supplemental Declaration of Heather Auyang ("Suppl. Auyang Decl.") at ¶ 2, Ex. A (list produced by Plaintiff of TP-Link's Amazon purchases from Plaintiff all show "Fulfillment method: Amazon" and Sales channel: "Amazon.com"); *see also* AC ¶ 12, Ex. 1 (same). Whatever Amazon's complaint procedure, Amazon clearly agreed that Plaintiff violated its policies and expelled it from the Amazon.com marketplace.

---

[7] TP-Link requested from Amazzia any specific complaints to Amazon about Plaintiff, but Amazzia has refused to provide any of the requested correspondence. *See* Suppl. Ryu Decl. ¶ 5.

3. <u>Plaintiff's retention to title of the goods is irrelevant as to whether TP-Link's use of the Amazon.com marketplace constitutes doing business with Plaintiff in New York</u>

Turning to Plaintiff's argument that TP-Link conducted business *directly* with Plaintiff in New York because Plaintiff retained title to the goods and not Amazon (Opp. at 7-8)—this has no bearing here. The issue is whether TP-Link directly transacted with Plaintiff *in New York* using a third-party online marketplace—the answer is no. Plaintiff cites *Erie Ins. Co. v. Amazon.com* and *Milo & Gabby* in which the court found Amazon does not hold title to the goods and is not consider the seller (Opp. at 7-8), but the issue presented in both cases was **whether Amazon** could be liable as the seller.[8] Here, the issue is whether the Court can exercise personal jurisdiction over an out-of-state buyer (TP-Link) who used an online marketplace platform (Amazon) to purchase products listed by a third-party seller (Plaintiff).[9]

II. **Careful Shopper has Provided No Evidence that TP-Link had Knowledge Plaintiff was located in New York to Support Its Claims for Libel *Per Se* and Tortious Interference**

At no time did TP-Link have reason to know that Plaintiff was located *in New York*. Plaintiff has failed to provide any evidence to the contrary. TP-Link's lack of knowledge as to Plaintiff's location obviates the exercise of personal jurisdiction by this Court. For example, Plaintiff incorrectly infers that its unilateral communications via email to TP-Link constitutes part of a "course of business" with Plaintiff in New York. Opp. at 14-15. Specifically, Plaintiff states that "[f]ollowing each transaction [Plaintiff] corresponded with [TP-Link] at [its] Amazon web address (amazon91773@gmail.com), seeking positive feedback" (Opp. at 15 (*citing* Starke Decl. at ¶ 14, Ex. 7). However, Plaintiff cannot create personal jurisdiction over TP-Link based on his own actions. *See Giuliano v. Barch*, No. 16-cv-0859 (NSR), 2017 WL 1234042, at *9 (S.D.N.Y.

---

[8] *See* Plaintiff Appendix, Ex. 5 at X-21, lines 12-13 (Order Granting Mot. for Sum. J., *Erie Ins. Co. v. Amazon.com*, 16-cv-02679 (RWT) (D. Md. Jan. 11, 2018), ECF No. 65 (finding that "Amazon is not the seller and cannot be held liable for the loss in this case" where the product is sold FBA)); *Milo & Gabby, LLC v. Amazon.com, Inc.*, 13-cv-1932 (RSM), 2015 WL 4394673 at *6 (W.D. Wash. July 16, 2015) (same).

[9] *Milo & Gabby* is instructive about Amazon's role for a third-party seller using FBA, further demonstrating how a buyer is removed from any interaction with the third-party seller, including (1) payment is made directly to Amazon, (2) Amazon issues the invoice and tracking information, (3) Amazon ships the products in a box that bears the Amazon logo, and (4) Amazon broadcasts email advertisements from its own account. 2015 WL 4394673 at *2-3.

Mar. 31, 2017) ("New York courts have consistently held that the unilateral acts of plaintiffs in the forum state do not support jurisdiction over a non-domiciliary defendant."). There is no dispute that TP-Link never *affirmatively* communicated or even responded to Plaintiff. Moreover, Plaintiff's alleged correspondence was *sent from an Amazon marketplace email address*.[10]

Plaintiff relies on *Gen. Elec. Capital Corp. v. Adams Commc'ns Corp.*, No. 91-cv-2729 (CSH), 1991 WL 190594 (S.D.N.Y Sept. 18, 1991) and *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir. 1985) for the unremarkable proposition that "'there is no requirement that activities which comprise a claim [in this case TP-Link's libelous IP Complaints] be committed in New York for the claim to arise out of the New York transaction upon which jurisdiction is predicated under 302(a)(1).'" Opp. at 10, 12. In fact, these cases support TP-Link's position because in each case the respective defendant *actually knew* that the plaintiff was located in New York, where the at-issue contracts were negotiated and governed by New York law, the defendant traveled to New York to meet with the plaintiff and had other direct contacts with the plaintiff to support personal jurisdiction. *See Gen. Elec. Capital Corp.*, 1991 WL 190594, at *1; *Hoffritz for Cutlery, Inc.*, 763 F.2d at 59-60. *Cf. Pichardo v. Zayas*, 122 A.D.3d 699, 701-02 (N.Y. App. Div. 2014) (finding lack of personal jurisdiction even though the at-issue contract was agreed upon in New York because facts related to the underlying tort claim occurred out-of-state). This is not the case here where TP-Link had no knowledge of Plaintiff's location.

III.   **There is no "Circle of Commercial Activity" Such that TP-Link Conducted Business with Plaintiff in New York**

Even if Plaintiff's coined "circle of commercial activity" (*see* Mot. at 11) had merit, Plaintiff simply fails to provide any accurate evidence such "circle" exists (*see* Opp. at 19-21). Plaintiff incorrectly surmises that because TP-Link ships products to B&H Photo in New York, that "[i]n at least one instance, TP-Link sold B&H a certain item that [Plaintiff] purchased from B&H and [TP-Link] later purchased from [Plaintiff] (and did not return)." Opp. at 19-20. However,

---

[10] *See* Stake Decl. at ¶ 14, Ex. 7 (for example, "tfmg0xx93k51rdfb@marketplace.**amazon.com**") (emphasis added).

7

Plaintiff identifies two *different* products making its "circle" argument non-existent. In other words, TP-Link never sold a product to a third-party distributor in New York, which was purchased by Plaintiff, who then resold the same product to TP-Link through Amazon.com.

Specifically, TP-Link purchased the **single-bulb product** (i.e., not the 2-Pack, which means two-bulbs, identified by Plaintiff) from Plaintiff through the Amazon.com marketplace as follows. Plaintiff purchased from B&H Photo the "TP-Link **LB120** Wi-Fi Smart LED Bulb Smartbulb with Tunable White Light **Kit** (**2-Pack**) **TPLB1202KIT**" on Oct. 23, 2017.[11] Opp. at 20; *see also* Starke Decl. ¶ 31, Ex. 11 at X-31 to X-33 (emphasis added). Plaintiff states that this purchase matches TP-Link "Order #111059255282257031" from Amazon on Nov. 6, 2017. *See* Starke Decl. ¶ 31 at Ex. 8. However, these are *not* the same product. Plaintiff's records indicate that Order #111059255282257031 is a LB120 Smart LED Bulb with ASIN: B01HXM8XHO— this product is the *single-bulb*. *See* Suppl. Auyang Decl. ¶ 2, Ex. A at CS00038 (Order #111059255282257031); *id*. ¶ 3, Ex. B at 8 (Amazon website identifies ASIN: B01HXM8XHO as LB120 *single-bulb*). *Cf*. Amazon website identifies ASIN number B075KW9GPB as LB120 "2 Pack." Suppl. Auyang Decl. ¶ 4, Ex. C.

Here, the connection between New York and the dispute is far too attenuated to exercise personal jurisdiction. Such exercise is especially problematic here given that the allegations involve out-of-state speech. *See SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n*, 963 N.E.2d 1226, 1229-30 (N.Y. 2012) ("[P]articular care must be taken to make certain that non-domiciliaries are not haled into court in a manner that potentially chills free speech without an appropriate showing that they purposefully transacted business here and that the proper nexus exists between the transaction and the defamatory statements at issue.").

---

[11] Plaintiff complains that TP-Link refused to provide 2016 invoices. Opp. at 20, fn.33. This is not accurate. Plaintiff *sua sponte* for the first time before Magistrate Judge Levy offered to narrow the date range of invoices starting in January 2017. *See* Plaintiff Appendix at X-38 (Nov. 30, 2018 Hrg. Tr. at 11:11-13). Plaintiff's choices should not be held against TP-Link. Regardless, during jurisdictional discovery Plaintiff produced only one invoice for its purchase of the two-bulb KIT LB120 from B&H Photo on October 23, 2017. *See* Starke Decl., Ex. 31 at X-31 to X-33.

8

IV. **Plaintiff's Claims are Subject to the Arbitration Provision in the Amazon Agreement**

As set forth in TP-Link's Motion (Mot. at 12-15), Plaintiff is required to arbitrate this dispute as a party to the broad arbitration provision found in the Amazon Services Business Solutions Agreement ("Amazon Agreement").[12] TP-Link has a right to enforce this arbitration provision through the equitable estoppel doctrine, which consists of two prongs—whether (1) "claims arise under the subject matter of the [arbitrable] agreement, and (2) there is a close relationship between the signatory and the non-signatory party." *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 476 (S.D.N.Y. 2013) (citations and quotation marks omitted). Mot. at 12-15.[13]

A. **Plaintiff's Claims against TP-Link Arise under the Amazon Agreement and are Subject to Its Arbitration Provision**

Plaintiff relies on *Bankers Conseco Life Ins. Co. v. Feuer*, 16-cv-7646 (ER), 2018 WL 1353279 (S.D.N.Y. Mar. 15, 2018) for its sole defense that equitable estoppel cannot apply because its tort claims against TP-Link do not "actual[ly] depend[]" on the Amazon Agreement. Opp. at 21-22. This is nonsensical because Plaintiff acknowledges its claims against TP-Link are based on the existence of the Amazon Agreement.[14] In fact, Mr. Starke, Plaintiff's owner and managing member, wrote a letter to Amazon's General Counsel, which detailed its "suspension/expulsion from the Amazon website as a Seller," even though Plaintiff had "abided Amazon's General Terms."[15] Auyang Decl., ¶ 7, Ex. E. The letter concludes that Plaintiff "may

---

[12] *See* Opp. at 1 ("In 2016, [Plaintiff] became a third-party seller on the Amazon Marketplace upon executing Amazon's Business Solutions Agreement ('BSA');" *see also* AC ¶ 21.

[13] Plaintiff grossly mischaracterizes *Sarhank Group v. Oracle Corp.*, 404 F.3d 657 (2d Cir. 2005), as standing for "[t]he general rule is that a non-party to an arbitration agreement is neither bound by the arbitration agreement nor has the right to enforce the arbitration agreement except in 'rare circumstances.'" Opp. at 21. First, this case never uses the language "rare circumstances." Second, *Sarhank Group* is inapplicable because the case involved whether a non-signatory is liable for damages awarded under an arbitration agreement entered into by its Egyptian subsidiary. *Id.* at 662. This is not case here where Plaintiff agreed to Amazon's arbitration provision.

[14] "In this case Amazon did not breach its contract with Plaintiff. 'The BSA provides that Amazon may terminate or suspend the Agreement or any service by notice to the seller for any reason at any time.' [] Rather, TP-Link's interference worked its harm when Amazon, perfectly within its rights, terminated [Plaintiff's] Marketplace selling privileges." Opp. at 11.

[15] The letter elaborates on the same allegations recited in Plaintiff's AC, including Amazon's notices of its violation of TP-Link's intellectual property rights (*compare* AC ¶¶ 27, 32), where Plaintiff purchased TP-Link's goods for

9

request arbitration in accordance with [] the General Terms. I do believe that in such event Amazon will be seen to have acted arbitrarily and otherwise in violation of well-established policies, terms and conditions." *Id*.

### B. **Plaintiff Claims a Close Relationship Exists Between the Parties**

Plaintiff cannot have it both ways—it spends the majority of its opposition arguing that Plaintiff and TP-Link had a close relationship sufficient to exercise personal jurisdiction because Plaintiff supposedly made *direct* sales to TP-Link using the Amazon.com marketplace, but then attempts to avoid arbitration by disclaiming the parties do not possess the requisite closeness to invoke the arbitration provision in the Amazon Agreement. As explained in TP-Link's Motion, any purported close relationship was created by Plaintiff such that it should have expected to consent to arbitration. *See Sokol Holdings, Inc. v. BMB Munai, Inc*., 542 F.3d 354, 361 (2d Cir. 2008) (examining the fact patterns in a number of cases what justified extending estoppel to a non-party to the arbitration agreement flowed from "the relationships among the parties developed in a manner that made it unfair for [the party disputing arbitration] to claim that its agreement to arbitrate ran only to [the other party to the arbitration agreement] and not to [the third-party seeking to invoke estoppel].").

Plaintiff relies on *Sokol Holdings* and *Medidata Sols., Inc. v. Veeva Sys., Inc.*, 748 Fed.Appx. 363 (2d Cir. 2018)[16] for the proposition that the party accused of tortious interference with contractual relations cannot seek arbitration. *See* Opp. at 22-24. Even if applicable, Plaintiff ignores that the court in *Sokol Holdings* found claims other than the tortious interference claim were subject to arbitration. 542 F.3d at 362 (finding claims related to specific performance of the contract subject to arbitration). This is the situation here. Plaintiff acknowledges that "both counts [libel *per se* and tortious interference with business relationships] of the complaint are **founded in defamation and libel**." Opp. at 3 (emphasis added). Thus, both claims (or at the very least the

---

resale (*compare* AC ¶ 23), the alleged defamatory complaints (*compare* AC ¶ 3), and states "TP-Link's counterfeiting charge is the only reason for my expulsion" (*see* AC ¶ 37). *Id*.

[16] According to Federal Rule of Appellate Procedure 32.1 and the Second Circuit's Local Rule 32.1.1, *Medidata Solutions* does not have precedential effect because it is a ruling by summary order.

10

claim for libel *per se*) should be subject to arbitration.

## CONCLUSION

For the foregoing reasons, and those stated in the Motion, TP-Link respectfully requests that the Court grant its Motion and dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(1).

Dated: February 27, 2019                        LTL ATTORNEYS LLP

                                             By: */s/ Heather Auyang*
                                                    Joedat Tuffaha
                                                    Heather Auyang
                                                    Prashanth Chennakesavan

                                                   *Attorneys for TP-Link USA Corp.*
                                                   *d/b/a TP-Link North America, Inc.*