UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
CAREFUL SHOPPER, LLC,

            Plaintiff,

      - against -                          **MEMORANDUM & ORDER**

TP-LINK USA CORPORATION d/b/a TP-
LINK NORTH AMERICA, INC.,             18-CV-3019 (RJD)(RML)

            Defendant.
------------------------------------------------------------ x
DEARIE, District Judge.

Plaintiff Careful Shopper, LLC ("Careful Shopper") brings a lawsuit against Defendant TP-Link USA Corporation ("TP-Link") alleging claims of libel *per se* and tortious interference arising from complaints made by a TP-Link representative about Plaintiff's sale of TP-Link's products on Amazon, which Plaintiff alleges caused it to be expelled from Amazon's online marketplace platform. Defendant now moves to dismiss on two grounds, arguing that the Court lacks personal jurisdiction under New York's long-arm statute, CPLR § 302 (a)(1), because there is no substantial relationship or articulable nexus between TP-Link's in-state activities and Plaintiff's claims, and that Defendant is entitled to arbitrate Plaintiff's claims pursuant to the arbitration provision of the agreement between Plaintiff and Amazon.[1] For the reasons that follow,

---

[1] Defendant styles its argument that Plaintiff's claims must be subject to arbitration as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). However, because the parties in this case have diverse citizenships and the Complaint alleges, and Defendant does not dispute, that the amount in controversy exceeds $75,000, the Court has diversity jurisdiction under 28 U.S.C. § 1332. Nonetheless, under the Federal Arbitration Act ("FAA"), a court must compel arbitration if it finds there has been a "failure, neglect, or refusal" of any party to honor the agreement to arbitrate. 9 U.S.C. § 4. Accordingly, the Court will treat Defendant's motion as one to compel arbitration. Consol. Precision Prod. Corp. v. Gen. Elec. Co., 2016 WL 2766662, at *2 (S.D.N.Y. May 12, 2016) ("Whether premised on diversity or federal-question jurisdiction, a federal court has subject-matter jurisdiction to decide arbitrability.")

Defendant's motion to dismiss for lack of personal jurisdiction is GRANTED and its motion to compel arbitration is DENIED.

## BACKGROUND

Careful Shopper, located in Brooklyn, New York, is a third-party seller on Amazon's online marketplace platform, Amazon.com, which means it is a downstream purchaser that lists and sells products manufactured by other companies. As a third-party seller, Careful Shopper's operations are bound by Amazon's Services Business Solutions Agreement ("Amazon Agreement" or "Agreement"), which prohibits sellers from offering any products in violation of the law on any Amazon site and authorizes Amazon to take corrective action against sellers that do, including terminating selling privileges.

TP-Link, which also does business as TP-Link North America, Inc., is a California subsidiary of a Chinese provider of Wi-Fi products, with its principle place of business in Brea, California. It manufactures and supplies networking products for home and small businesses, such as switches, routers, and components for wireless systems, and maintains distribution channels in various states, including New York. All TP-Link products sold directly to consumers or sold through authorized resellers are covered by TP-Link's product warranty. However, TP-Link does not extend its warranty coverage to products sold by unauthorized resellers, rendering such products "counterfeit" because they are materially different from those sold by authorized resellers. In order to protect its intellectual property rights, TP-Link has contracted with another California based company, Amazzia, to track unauthorized sales of its products on Amazon. When Amazzia identifies unauthorized resellers, it uses a TP-Link email address to report the violations to Amazon, which is domiciled in the State of Washington.

Starting in 2016, when it first became a third-party seller on Amazon, Careful Shopper purchased hundreds of TP-Link's products from various authorized resellers, such as Amazon, Fry's Electronics and B&H Photo Video ("B&H"), and then sold them on Careful Shopper's storefront on Amazon.com. These products were at all relevant times physically held in Amazon's warehouses pursuant to the Fulfilled by Amazon ("FBA") program, whereunder Amazon handles storage, delivery, customer complaints and other logistics.

On March 31, 2018, Amazon notified Careful Shopper that it received a complaint from TP-Link about Careful Shopper's listing of two "counterfeit" TP-Link products on its storefront.[2] Careful Shopper contacted TP-Link asking them to retract the complaint, but never received a response or a retraction. On April 9, 2018, Amazon again notified Careful Shopper about another complaint from TP-Link regarding Careful Shopper's listing of one of TP Link's products. Careful Shopper alleges that it then made repeated attempts to convince Amazon that it had purchased the accused items from an authorized source, providing pictures of the items' identifying information. However, after reviewing Careful Shopper's account and the information it provided, Amazon decided to prohibit it from continuing to sell on Amazon.com.

Careful Shopper attempted to appeal its expulsion through Amazon's administrative options, including sending a certified letter to Amazon's General Counsel, but was unable to persuade Amazon to reinstate its selling privileges. Plaintiff then commenced this action, alleging that TP-Link's accusations of counterfeiting against Careful Shopper were knowingly false and intended to suppress competition, constituting libel *per se* and tortious interference of

---

[2] According to TP-Link, these products are "counterfeit" because the original manufacturer's warranty does not extend to products sold by unauthorized resellers such as Careful Shopper, and the sale of materially different products constitutes trademark infringement. See Original Appalachian Artworks, Inc. v. Granada Elecs., Inc., 816 F.2d 68, 71-73 (2d Cir. 1987).

3

Careful Shopper's business relationship with Amazon. Following Defendant's filing of its motion to dismiss, the Court ordered the parties to engage in jurisdictional discovery, which has now been completed.

## DISCUSSION

### 1. The Court Lacks Personal Jurisdiction Over Defendant TP-Link

On a motion to dismiss for lack of personal jurisdiction brought pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003). Where, as here, the parties have conducted jurisdictional discovery, "the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction[al challenge], must include an averment of facts that, if credited ... would suffice to establish jurisdiction over the defendant." Id. However, the Court need not "draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59 (2d Cir. 2012) (citations omitted) ("Licci I").

Plaintiff acknowledges that its only asserted basis for the Court's personal jurisdiction is under New York's long-arm statute, CPLR §302(a)(1).[3] Under this statute, a non-resident defendant is subject to jurisdiction for torts committed out-of-state if (1) the defendant "transacts any business" in the state; and (2) there is an "articulable nexus" or "substantial relationship"

---

[3] In addition to satisfying the requirements of New York's long-arm statute, the Court's exercise of personal jurisdiction must of course comport with constitutional due process principles, which requires the Court to consider "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 60 (2d Cir.) (internal citations omitted). Following pre-motion proceedings and a telephonic hearing before the Magistrate Judge, the parties stipulated that TP-Link would not contest the constitutionality of this Court's exercise of personal jurisdiction.

4

between defendant's in-state activity and the claim asserted. Licci I, 673 F.3d at 60,66. When evaluating whether a defendant "transacted business" in the state, the Court must consider "whether the defendant purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, such that [the defendant] should reasonably anticipate being haled into court there." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462,475 (1985)). Moreover, "whether a plaintiff's claim arises from a defendant's New York contacts depends upon the nature and elements of the particular causes of action pleaded." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 169 (2d Cir. 2013) (internal citations omitted) ("Licci II").

Plaintiff brings claims of tortious interference and libel *per se*. To state a claim of tortious interference under New York law, a plaintiff must show "the existence of a valid contract, the defendant's knowledge of the contract's existence, that the defendant intentionally procured a contract breach, and the resulting damages to the plaintiff." Catskill Dev., LLC v. Park Place Entm't Corp., 547 F.3d 115, 124-25 (2d Cir. 2008). In order to make out a claim of libel *per se*, the plaintiff must demonstrate "(1) a written defamatory statement of fact regarding the plaintiff; (2) published to a third party by the defendant; (3) defendant's fault, varying in degree depending on whether plaintiff is a private or public party; (4) falsity of the defamatory statement; and (5) injury to plaintiff." Meloff v. N.Y. Life Ins. Co., 240 F.3d 138, 145 (2d Cir. 2001). Thus, the Court only can only exercise personal jurisdiction over Defendant if Plaintiff sufficiently establishes *both* that TP-Link's activities in New York "were purposeful and there is a substantial relationship between the [activities] and the claim[s] asserted." PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1109 (2d Cir. 1997). However, CPRL 302(a)(1) "does not require that every element of the cause

of action pleaded must be related to the New York contacts; rather, where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute." Licci II, 732 F.3d at 169.

### a. TP-Link's Online Purchases from Careful Shopper's Storefront Are Not "Transactions of Business" in New York

Plaintiff alleges, and Defendant does not dispute, that all three complaints made to Amazon relate to products that were purchased from Careful Shopper's Amazon.com storefront by Tom Lei, who works for Amazzia monitoring unauthorized third-party sales of TP-Link's products. According to Plaintiff, Mr. Lei conducted various test-purchases of TP-Link products, which he then used to substantiate the counterfeiting complaints that resulted in Careful Shopper's expulsion from Amazon's online marketplace. Plaintiff argues that Mr. Lei's test purchases constitute transactions of business in New York by TP-Link, and that these transactions have a substantial relationship or articulable nexus to Plaintiff's claims of tortious interference because they establish that TP-Link had knowledge of Careful Shopper's business relationship with Amazon and that TP-Link had an intent to falsely accuse Careful Shopper and harm Careful Shopper's relationship with Amazon.

However, this argument suffers from one fatal flaw: Plaintiff has presented no evidence that when Mr. Lei bought products from Careful Shopper's storefront on Amazon.com, he had any knowledge that he was purchasing goods from a New York-based company. Even though Mr. Lei knew he was making purchases from a third-party and not directly from Amazon, there is nothing in the record that establishes that Careful Shopper's online storefront indicated it was located in New York. All of Mr. Lei's purchases were made online from California on Amazon.com, and since Careful Shopper elected to fulfill its orders through Amazon's FBA program, all products

were delivered to Mr. Lei in California by Amazon from one of Amazon's regional warehouses. Contrary to Plaintiff's argument, these circumstances are distinguishable from those in Bel Canto Design, Ltd. v. MSS Hifi, Inc, where the Court explained that "a telemarketing site and even the receipt of Internet orders physically within New York State appear to form a New York locus for a transaction covered by the New York State consumer protection statutes." 837 F.Supp.2d 208, 228 (S.D.N.Y. 2011). As an initial matter, Bel Canto addressed whether out-of-state customers who made online purchases from a New York based seller should be protected by New York's consumer protection statute, not whether they were subject to personal jurisdiction in New York courts. Id. But more importantly, the Court found that out-of-state online customers were entitled to the same warranty protection as in-state customers because the defendant "accept[ed] and fill[ed] internet orders in New York." Id.

Mr. Lei's online purchases of Careful Shopper's products cannot be considered to be transactions in New York that should subject TP-Link to personal jurisdiction in New York courts because these purchases do not constitute "purposeful, volitional activity in New York by the defendant." Funk v. Belneftekhim, 2017 WL 5592676, at *9 (E.D.N.Y. Nov. 20, 2017), aff'd in part, appeal dismissed in part, 739 F. App'x 674 (2d Cir. 2018); cf. Licci II, 732 F.3d at 168 ("[C]omplaints alleging a foreign bank's repeated use of a correspondent account in New York on behalf of a client...show purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of New York and the United States.").

> **b. There Is No "Substantial Relationship" or "Articulable Nexus" Between Plaintiff's Claims and TP-Link's Supply of Products to Distributors in New York**

7

Alternatively, Plaintiff alleges that in at least one instance, TP-Link sold a product to B&H in New York as part of their distribution agreement, which Careful Shopper then purchased from B&H and sold to Mr. Lei. Relying on these facts, Plaintiff argues TP-Link's supply of products to B&H in New York, followed by its purchase of the same item from Careful Shopper bears an articulable nexus to its libel *per se* and tortious interference claims because it demonstrates TP-Link's knowledge that the products Careful Shopper offered for sale were authentic and not counterfeit.

Defendant does not dispute that it "transacts business" in New York by supplying its products to distributors such as B&H. Nonetheless, it argues that the connection between TP-Link's New York activities and Plaintiff's claims are far too attenuated to exercise personal jurisdiction, particularly because this connection was broken when Plaintiff went from being a consumer to marketing TP-Link's products for sale on Amazon in a way that infringed TP-Link's intellectual property rights.

Indeed, Plaintiff's claims do not arise from TP-Link's supply of products to third-parties in New York or even from Mr. Lei's online purchases of those products—they arise from allegedly defamatory complaints sent from California to Washington-based Amazon, about Careful Shopper's online marketing of TP-Link's products in violation of TP-Link's intellectual property rights. Importantly, none of the three complaints made to Amazon related to TP-Link products that Careful Shopper purchased from B&H and then sold to Mr. Lei, but instead were about products that Careful Shopper purchased from Amazon.com. See Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317, 323 (2d Cir.1964) (insufficient nexus where plaintiff purchased tickets for bus from agent in New York and sued in tort based on accident in Arizona).

Even assuming that TP-Link's indirect sale of a product to Careful Shopper and subsequent repurchase of the same product from Careful Shopper somehow afforded TP-Link knowledge that this product was authentic, these transactions have, at best, a tangential relationship to TP-Link's knowledge of whether Careful Shopper marketed other TP-Link products in a way that infringed TP-Link's intellectual property rights, including the products that were the subject of the complaints to Amazon. In fact, TP-Link's supply of products to New York is irrelevant to Plaintiff's action because its claims would exist even if TP-Link never sold any products in New York. See Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 767 (2d Cir. 1983) (finding no articulable nexus between plaintiff's trademark infringement claim and defendant's shipment of goods to New York because the "controversy arose as a result of [defendant's] 'cease and desist' letter, not her New York commercial activity.").

TP-Link's distribution contracts in New York do not create an "articulable nexus" for every lawsuit related to a TP-Link product, only to claims that arise directly out of the sale of products supplied through those contracts—which is not the case here. The allegedly defamatory complaints were never published in or directed at New York, and did not involve products that TP-Link sold to any third-parties in New York. The connection between TP-Link's New York activities and Plaintiff's claims is far too attenuated for this Court to exercise personal jurisdiction over the Defendant, particularly since the allegations involve out-of-state speech. SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n, 18 N.Y.3d 400, 405–06 (2012). ("Through CPLR 302, the Legislature has manifested its intention to treat the tort of defamation differently from other causes of action and we believe that, as a result, particular care must be taken to make certain that non-domiciliaries are not haled into court in a manner that potentially chills free speech without

an appropriate showing that they purposefully transacted business here and that the proper nexus exists between the transaction and the defamatory statements at issue.").

## 2. Defendant TP-Link Cannot Compel Plaintiff to Arbitrate Its Claims

Defendant also argues that Plaintiff is required to arbitrate its claims as a party to the broad arbitration provision in the Amazon Agreement, which requires Plaintiff and Amazon to resolve "any ... claim relating in any way to [the] Agreement or [Plaintiff's] use of [Amazon's] Services" by binding arbitration. Although Defendant acknowledges that it is not a party to the Agreement, it argues that the equitable estoppel doctrine precludes Plaintiff from avoiding the agreement it signed.

Courts must enforce an arbitration agreement if (1) the parties agreed to arbitrate, and (2) the scope of the arbitration clause encompasses the claims at issue. Holick v. Cellular Sales of New York, LLC, 802 F.3d 391, 394 (2d Cir. 2015) (citation omitted). Even though such agreements are usually only enforceable against the parties who are signatories because "[i]t is black letter law that an obligation to arbitrate can be based only on consent," Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354, 358 (2d Cir. 2008), a non-party to the agreement may invoke equitable estoppel to compel arbitration against signatories when (1) "the issues the non-signatory is seeking to resolve in arbitration are intertwined with" the arbitration agreement, and (2) there is a "close relationship" between the non-signatory party and the parties bound to arbitrate. Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir. 1995). To determine if the claims at issue are "intertwined" with an arbitration agreement, courts assess "plaintiff's *actual dependence* on the underlying contract in making out the claim against the non-signatory defendant." Denney v. Jenkens & Gilchrist, 412 F. Supp. 26 293 (S.D.N.Y. 2005) (emphasis in original). As for the necessary "close relationship" between the parties, the Second Circuit has

identified four circumstances where a non-party was allowed to compel a signatory to arbitrate on an estoppel theory: (1) non-party defendants were corporate parents of the plaintiff's counterparty to the arbitration agreement; (2) there was "a close affiliation between [the non-party defendant and plaintiff's counterparty to the arbitration agreement], of which [plaintiff] had been aware by having dealt with and accepted instructions from [both entities] interchangeably, treating them effectively as the same entity"; (3) the contract between non-party defendant and plaintiff incorporated by reference the contract with the arbitration clause; and (4) non-party defendants who were originally signatories to the contract with the arbitration clause but had assigned their interest to their affiliates, had an "identity of interest" with the current signatories which "had been established with the knowledge and consent of [plaintiff], and which justified allowing [non-party defendants] to invoke the arbitration clause." Sokol Holdings, Inc., 542 F.3d at 361. In all these circumstances, the non-party defendant "was, or would predictably become, with [plaintiff's] knowledge and consent, affiliated or associated with [plaintiff's counterparty to the arbitration agreement] in such a manner as to make it unfair to allow [plaintiff] to avoid its commitment to arbitrate claims that are concededly intertwined with the substance of the [arbitration] agreement..." Medidata Sols., Inc. v. Veeva Sys. Inc., 748 F. App'x 363, 366 (2d Cir. 2018) (summary order).

Here, Plaintiff's claims of tortious interference and libel *per se* are not intertwined with the Amazon Agreement nor does TP-Link have a close enough relationship with Amazon under Second Circuit law to permit Defendant to compel Plaintiff to arbitrate this dispute. Defendant contends that Plaintiff's claims fall squarely within the subject matter of the Amazon Agreement because they are entirely premised on Plaintiff's use of Amazon's e-commerce service and arise from Plaintiff's violation of the terms the Agreement, which prohibits the sale of trademark

11

infringing products. However, contrary to Defendant's suggestion, both claims relate to Defendant's conduct towards Plaintiff and Amazon, not Plaintiff's conduct, and are only tangentially related to Plaintiff's obligations under the Agreement or Plaintiff's use of Amazon's services. While an ultimate decision on the merits will require the Court to evaluate whether Plaintiff infringed TP-Link's intellectual property rights such that Amazon was within its rights to expel Careful Shopper from Amazon.com, Plaintiff's claims are not premised on any of the terms of the Amazon Agreement and arise independently under tort law.

Moreover, Defendant erroneously focuses on the quality of the relationship between Plaintiff and TP-Link in arguing that, by choosing to offer TP-Link's products for sale on Amazon pursuant to an agreement to arbitrate all disputes relating to its use of Amazon's platform, Plaintiff created a relationship with TP-Link and voluntarily extended the Amazon Agreement's arbitration clause to TP-Link. However, as Sokol and Medidata make clear, the relevant relationship to this analysis is the one between TP-Link and Amazon, and the facts here present none of the circumstances described in those cases that would entitle Defendant to invoke equitable estoppel. In fact, in Sokol, the Second Circuit explained that in cases involving claims of tortious interference, "there would be no unfairness in allowing [plaintiff], the victim of the tortious interference, to insist that, while he agreed to arbitrate with his contractual counterparty [], he in no way consented to extend that agreement to an entity which tortiously subverted his rights under the agreement." 542 F.3d at 362.

## CONCLUSION

Plaintiff's claims of tortious interference and libel *per se* are not subject to the Amazon Agreement's arbitration clause because Defendant has failed to establish that, as a non-signatory of the Agreement, it is entitled to compel arbitration under the doctrine of equitable estoppel.

Nonetheless, the Court lacks personal jurisdiction over Defendant under CPLR § 302(a)(1) because there is no articulable nexus or substantial relationship between Plaintiff's claims and TP-Link's business transactions in New York. Accordingly, Defendant's motion to compel arbitration is denied, and the motion to dismiss for lack of personal jurisdiction is granted.

SO ORDERED.

Dated: September 30, 2019
Brooklyn, NY

s/ Raymond J Dearie
Raymond J. Dearie
United States District Judge